**Doris ABERNATHY, et al., Plaintiffs,**

v.

**Clayton K. YEUTTER, et al., Defendants.**

**No. 88–4574–CV–C–5.**

United States District Court, W.D. Missouri, C.D.

Aug. 18, 1989.

Joel Ferber, Frances Grecco, Molly A. Ryan and Ann Lever, Legal Aid of Eastern Missouri, St. Louis, Mo., for plaintiffs

Kenneth C. Kohl, U.S. Dept. of Justice, Washington, D.C., for defendants.

Vernon Poschel, Asst. U.S. Atty., Kansas City, Mo., for Yeutter.

Jerry Short, Missouri Atty. General's Office, Jefferson City, Mo., for Reagen and Willmarth.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Before this Court are cross-motions for summary judgment filed pursuant to Rule 56, Fed.R.Civ.P. Also before this Court is plaintiffs' request for class certification pursuant to Rule 23, Fed.R.Civ.P. Plain-

tiffs individually, or as representatives of a class, challenge defendants' method of computing food stamp over-issuance claims in cases where an overpayment of food stamps and cash assistance benefits has occurred during the same period of time and where such claims are the results of an administrative or inadvertent household error. Plaintiffs seek injunctive relief and a declaratory judgment. For the reasons set out below, plaintiffs' request for class certification is granted, and summary judgment is entered in favor of defendants.

## I. *Class Certification*

■ Plaintiffs seek certification of the following class of persons:

> All past, present and future food stamp recipients in the State of Missouri whose households have incurred or will incur a food stamp over-issuance resulting from an inadvertent household error or an administrative error, and whose households also incurred or will incur a cash assistance overpayment for some or all of the same period of time included in the food stamp over-issuance period.

The Court has sufficient information to determine that certification is appropriate pursuant to Rule 23(a) and (b)(2), Fed.R. Civ.P.

Under Rule 23(a)(1), the proposed class must be so numerous that joinder is impracticable. As of May, 1988, the total number of food stamp households in the State of Missouri was 145,892. Of that number, 54,426 also received public assistance benefits. As a determination of the legality of defendants' method of computation of food stamp over-issuance claims will impact thousands of households which receive food stamps, the putative class is so large that joinder of all class members is impracticable. In addition to the sheer size of the class, joinder is impracticable because putative class members are low-income individuals who lack the financial capacity to bring individual actions. Therefore, the prerequisites of Rule 23(a)(1) are met.

The requirements of Rule 23(a)(2) are also met as there is a question of law common to the class. Plaintiffs claim that the defendants' policy of counting as income in food stamp over-issuance claims all cash assistance subject to recovery as an overpayment is violative of the Food Stamp Act, the Administrative Procedures Act, Article I of the United States Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution. By definition, all class members, who have incurred or will incur a food stamp over-issuance resulting from an inadvertent household error or an administrative error, will incur a cash assistance overpayment for some or all of the same period of time included in the food stamp over-issuance period. Under defendants' present policy, each class member will have the amount of the cash assistance overpayment included as income when the amount of her food stamp over-issuance is calculated. Thus, there are questions of law applicable to the class as a whole. And plaintiffs have demonstrated that all members of the class will have the same or similar grievance as the named plaintiffs. As a result, both 23(a)(2) and (3)—commonality and typicality requirements—are satisfied.

Finally, plaintiffs must demonstrate that they will fairly and adequately represent the interests of the class. Rule 23(a)(4), Fed.R.Civ.P. As no antagonism exists between the named plaintiffs and the class members they seek to represent, and plaintiffs' counsel is competent to conduct this litigation, the requirements of 23(a)(4) are satisfied.

Plaintiffs seek certification of a class under Rule 23(b)(2) of the Fed.R.Civ.P. This subsection authorizes certification of a class when the requirements of Rule 23(a) are met and:

> The party opposing the class has acted or refused to act on a grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

Defendants have acted on grounds generally applicable to the plaintiff class. Plaintiffs seek injunctive and declaratory relief from this action. Therefore, this Court holds that class certification is appropriate. Accordingly, plaintiffs' class is defined as:

All past, present and future food stamp recipients in the State of Missouri whose households have incurred or will incur a food stamp over-issuance resulting from an inadvertent household error or an administrative error and whose households also incurred or will incur a cash assistance over-payment for some or all of the same period of time included in the food stamp over-issuance period.

## II. *Background*

Congress established the food stamp program to improve the diets of low-income households by increasing their purchasing power. It is a national program; eligibility and benefit standards are set by federal statutes and regulations and are uniform throughout the country. *See* 7 U.S.C. §§ 2014, 2017 (1982). The Secretary of Agriculture ("the Secretary") is directed to "issue such regulations ... as the Secretary deems necessary or appropriate for the effective and efficient administration of the food stamp program." *Id.* § 2013(c). Like many other benefit programs, however, the food stamp program is administered by state and local agencies that are supervised by the U.S. Department of Agriculture ("USDA"). *See Id.* § 2020. In Missouri, the Division of Family Services (DFS) administers the Food Stamp program and is bound by federal and state regulations.

The Aid to Families with Dependent Children (AFDC) program is authorized by the Social Security Act, 42 U.S.C. §§ 601 *et seq.* Its purpose is to provide financial assistance to families comprised of needy children who are deprived of parental support or care due to the death, continued absence from home, unemployment, or incapacity of a parent. 42 U.S.C. §§ 606(a), 607. In Missouri, the AFDC program is administered by the Missouri Division of Family Services pursuant to a plan adopted by the State in accordance with specific requirements set forth in 42 U.S.C. § 607(a).

A household's eligibility for food stamps is directly affected by the amount of federal public assistance benefits it receives under the AFDC program. The Food Stamp Act broadly defines household income as "income from whatever source," 7 U.S.C. § 2014(d), "excluding only" those items appearing on a list of "specific and limited" exclusions. "Under this system, assistance payments from federal or federally aided public assistance programs or state or local benefit programs are considered to be fully includable income unless the law providing for the payments contains language that 'specifically excludes' those payments from consideration as income for the purpose of determining eligibility for the food stamp program." H.R.Rep. No. 788, 96th Cong., 2nd Sess., 121 *reprinted in* 1980 U.S.Code Cong. & Admin.News 843, 954. The Act unequivocally includes AFDC payments as income:

> (b) Definition of income. Household income shall mean all income from whatever source excluding only items specified in paragraph (c) of this section ... (2) Unearned income shall include, but not be limited to: (i) assistance payments from federal or federally aided public assistance programs, such as Supplemental Security Income (SSI) or Aid to Families with Dependent Children (AFDC)

7 C.F.R. § 273.9(b)(2)(i) (1987).

When making food stamp eligibility determinations, state agencies generally rely on the income information provided to them by applicant households. 7 U.S.C. § 2020(e)(2). In those cases where a household under-reports its total income—whether by fraud or inadvertence—the state agency is required to collect from the household any resulting over-issuance of food stamp benefits. 7 U.S.C. § 2022(b). Collection of such overpayments in non-fraud cases is limited to a ten percent reduction of the household's future monthly food stamp allotment or $10.00 per month, whichever is greater. 7 U.S.C. § 2022(b)(2)(A). The Act authorizes similar recoupment efforts when the over-issuance of benefits is attributable to administrative error on the part of the state agency. *Id.* The key calculation in this case is the method used by state agencies to assess the amount of a food stamp overpayment in those cases where there has been an overpayment of both AFDC benefits and food

stamp benefits. The Secretary's regulation concerning over-issuance claims, 7 C.F.R. § 278.18, instructs state agencies to calculate and collect the difference between the food stamp allotment the household actually received and the allotment the household should have received:

> (ii) If the household received a larger allotment than it was entitled to receive, the state agency shall establish a claim against the household equal to the difference between the allotment the household received and the allotment the household should have received.

7 C.F.R. § 278.18(c)(1)(ii) (1988).

In those cases where a household receives an over-issuance of both food stamps and AFDC benefits, the Secretary requires state agencies to apply the same formula—households are required to repay the difference between the food stamps they actually received and the amount of food stamps they should have received. The amount a household should have received during a particular month is determined by examining the household's actual income during the month, including unearned income such as AFDC benefits. Therefore, under the Secretary's approach, a household that receives an over-issuance of AFDC and food stamps in a given month will be required to repay any food stamp benefits to which they were not entitled given their actual income during that month, including the actual AFDC benefits received.

Plaintiffs are a class of food stamp recipients in the State of Missouri who disagree with the Secretary's method of computing food stamp over-issuance claims in those cases where the household has simultaneously received an over-issuance of food stamp coupons and cash assistance payments such as AFDC. Plaintiffs contend that, once an overpayment under both benefit programs is discovered, the Secretary should not count such AFDC overpayments as "income" for the purposes of determining the correct amount of food stamp benefits the household should have received during the overpayment period. Plaintiffs argue that the "proper method" for computing food stamp over-issuances is to ig-

nore the amount of AFDC benefits the household actually received and count only the amount of AFDC benefits the household would have received absent error as income.

The plaintiffs contend that the Secretary's failure to follow their method of computing food stamp over-issuances violates the Food Stamp Act, the Secretary's interpretative regulations, the Due Process and Just Compensation Clauses of the Fifth Amendment of the U.S. Constitution, as well as Article I of the U.S. Constitution. Plaintiffs also allege that the Secretary has adopted his method of computing food stamp over-issuances without following the notice and comment provisions of the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 703–706.

As discussed below, the Secretary's method of computation is reasonable and consistent with the Food Stamp Act and United States Constitution. Furthermore, the Secretary's interpretation of its regulations did not violate the notice and comment provisions of the Administrative Procedure Act.

### III. Standard of Review

#### A. Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." The initial burden is on the movant to demonstrate to the Court those portions of the factual record which show there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* 106 S.Ct. at 2552–53.

Once the movant has made the required showing, "it is then the respondent's bur-

den to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue." *City of Mt. Pleasant v. Assoc. Elec. Co–Op,* 838 F.2d 268, 273–74 (8th Cir.1988). However, in this case there are simply questions of law for the Court to resolve. As explained below, defendants are entitled to judgment as a matter of law.

### B. Statutory Construction

Congress has not given any statutory guidance as to how over-issuances should be calculated. Congress has conferred on the U.S.D.A. the authority to issue both legislative and interpretive rules. 7 U.S.C. § 2013(c). The Secretary has adopted a method of calculation. 7 C.F.R. § 273.18(c)(1)(iii). Plaintiffs do not attack the codified formula for calculating the amount of an over-issuance claim; plaintiffs challenge the Secretary's interpretation of the subtrahend contained in the codified equation.

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court described the deferrence to be accorded to an agency's interpretation of statutory language:

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpre-

tation made by the administrator of an agency.

104 S.Ct. at 2782; *accord Webb v. Bowen,* 851 F.2d 190, 192 (8th Cir.1988). The Eighth Circuit notes, "[t]he construction of a statute by an agency charged with its administration is entitled to substantial deference." *State of S.D. v. C.A.B.,* 740 F.2d 619, 621 (8th Cir.1984) (citation omitted); *Drake v. Honeywell,* 797 F.2d 603, 607 (8th Cir.1986). Furthermore, "The Court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron v. N.R.D.C.,* 104 S.Ct. at 2782; *State of S.D. v. C.A.B.,* 740 F.2d at 621; *accord Bailey v. Federal Intermediate Credit Bank,* 788 F.2d 498, 500 (8th Cir.), *cert. denied,* 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986). However, a court need not defer to an agency's interpretation of its own regulations "if that interpretation is plainly inconsistent with the wording of the regulation, or otherwise deprives affected parties of fair notice of the agency's intentions." *Oglala Sioux Trible of Indians v. Andrus,* 603 F.2d 707, 718 (8th Cir.1979) *quoted in Munsinger v. Schweiker,* 709 F.2d 1212, 1215 (8th Cir. 1983). This Court must determine if the Secretary's interpretation of its own regulation is plainly inconsistent with the wording of the regulation. If not, the question before this Court is whether the Secretary's interpretation of the statute is a reasonable one.

### IV. *Analysis*

#### A. The Secretary's method does not substantively violate the statutory scheme

■ The defendants' interpretation of 7 C.F.R. § 278.18(c)(1)(ii) does not violate the language or legislative history of the Food Stamp Act. This regulation itself creates a simple subtraction formula for calculating the amount of a food stamp overissuance claim:

| Food Stamp Allotment household received | − | Food Stamp Allotment household should have received | = | Amount of claim |

Plaintiffs initiated this cause of action because they find fault with the Secretary's definition of the subtrahend (Food Stamp Allotment Household Should have Received).

In order to determine this decrement, the Secretary turns to the express language in the Food Stamp Act itself. The Secretary aggregates the actual income of a household as mandated by the Act. 7 U.S.C. § 2014(d); 7 C.F.R. § 273.9(b)(2)(i). The Act requires the Secretary to consider all income actually received by a household excluding only those items specifically and expressly excluded. The Act provides no exclusion for AFDC payments and does not carve out any special exception for AFDC payments received as a result of household or administrative error. The legislative history declares that AFDC payments are to be considered income. The plain meaning of the statute compels the inclusion of all AFDC benefits received by a household as income during the month in which they were received. *See also Allen v. Bergland*, 661 F.2d 1001 (4th Cir.1981).

At first glance, this method of recoupment may seem inequitable or even violative of the purpose of the Food Stamp Act. However, the Secretary's interpretation is equitable. First, collection of overpayments in non-fraud cases is limited to a 10 per cent reduction of the household's future monthly food stamp allotment or $10.00 per month, whichever is greater. 7 U.S.C. § 2022(b)(2)(A). As a result, any recoupment would not work a substantial hardship on a household. Furthermore, the particular method of recoupment is equitable. AFDC overpayments are presumably used by plaintiffs in the month such payments are received. Basing a recipient's food stamp allotment on available income defined as including such overpayments is not harsh.

Furthermore, those needy households still participating in both the food stamp and AFDC programs when recoupment is made are equitably accommodated by the existing statutory scheme. When AFDC overpayments are recouped, the plaintiffs' food stamp allotments will increase. *See* 7 C.F.R. § 273.9(b)(5)(i). As plaintiffs' future AFDC benefits are decreased in order to gradually recoup the AFDC overpayment, the household's actual income declines. As state agencies are prohibited from including as income the amount of AFDC benefits used to repay a prior overpayment of benefits, when a household's income decreases, its food stamp allotment will proportionately increase. Thus, the statutory framework accommodates the event of an AFDC recoupment in an equitable manner.

Some members of plaintiff class repay AFDC overpayments when they no longer receive food stamps. There plaintiffs contend that the Secretary's method is arbitrary and capricious and violative of the purpose behind the Food Stamp Act with respect to their situation. First, the purpose of the Act is to provide households with additional purchasing power based on a particular need during a particular period of time. Recoupment of prior AFDC overpayments to some families, who through hard work or happenstance have increased their standard of living and no longer qualify for food stamps, does not render the nationwide application of the Secretary's method unreasonable, arbitrary or capricious. The Secretary is charged with a formidable task—administering the food stamp program. Although it is not desirable or necessarily inevitable, in the consistent administration of a program this size some inequities result. Yet the existence of some inequity as a result of the management of a gross program is not dispositive on the issue of whether the Secretary's ministeration of such a program substantively violates the mission or express dictates of the program.

The goal of the Food Stamp Act is to alleviate some of the hardships facing low income families. In order to assess a recip-

ient's needs, the Act has provided a method of computing a family's income. The Act then supplements this income by providing food stamps in order that families may improve the quality of their diets. By focusing on the income actually received by a family during a particular month, the Secretary distributes its limited resources fairly. Congress contemplated the situation where families would receive both food stamps and AFDC. Congress intended that all AFDC benefits be included as income. If and when any overpayment of AFDC benefits is recouped, a needy family receiving food stamps will have their food stamp allotment increased proportionately. As a whole, the Secretary's implementation of the Act is consistent, rational and contemplative of the purpose of the Act and its interplay with AFDC programs.

### B. The Secretary has Not Violated the APA

■ Additionally, plaintiffs contend that the Secretary's method of computing food stamp over-issuances is unlawful because it was not promulgated in accordance with the notice and comment provisions of the APA, 5 U.S.C. §§ 552 and 553 *et seq.* At this juncture the Court notes that the plaintiffs do not contend that 7 C.F.R. § 278.18 violates the APA in any way. Plaintiffs merely contend that the Secretary's implementation of this statute is procedurally flawed.

Despite the exemption from APA procedures for grant and benefit programs, 5 U.S.C. § 553(a)(2) (1982), food stamp regulations must be promulgated "in accordance with the procedure set forth in § 553 of Title 5," 7 U.S.C. § 2013(c)(1982). Yet, § 553(b)(A) exempts "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice" from the notice and comment requirements. "An interpretive rule, as distinguished from a substantive or legislative rule, clarifies or explains existing law or regulations ... Interpretive rules may include an administrative construction of a statutory provision on a question of law reviewable in the courts." *McKenzie v. Bowen,* 787 F.2d 1216, 1222 (8th Cir.1986)

(citations omitted). *See also Allen v. Bergland,* 661 F.2d 1001, 1007 (4th Cir.1981).

The Secretary's determination—that the subtrahend of 7 C.F.R. § 278.18(c)(1)(ii) be calculated by including AFDC overpayments as income during the month they are received—is consistent with the statutory scheme and purpose of the Food Stamp Act. The Secretary's clarification of this statute's import did not evoke the notice and comment requirements of the APA.

The Secretary's method of calculation does not violate the Freedom of Information Act (FOIA) provisions of the APA. 5 U.S.C. § 552(a)(1)(D). This section mandates "substantive rules of general applicability adopted as authorized by law and statements of policy or interpretations of general applicability formulated and adopted by the agency" be published in the Federal Register. 5 U.S.C. § 552(a)(1)(D). Courts have required agency publication of policy statements "only if they constitute a change from existing law, policy or practice." *Knutzen v. Eben Ezer Lutheran Housing Center,* 815 F.2d 1343, 1351 (10th Cir.1987). This standard necessitates a review of memoranda before this Court to determine if the Secretary's method reflects a change in then existing *national* policy. *See Id.* n. 7.

Memoranda submitted by plaintiffs erode rather than substantiate their claim. Although these memoranda indicate that some regional offices had misconceptions regarding the USDA's national policy, several memoranda clarify the national policy to the regional offices. In an August 19, 1987 letter, Mark J. Cardosi states, when describing the Secretary's method which is the basis for this lawsuit:

> We consider this method of determining claims inappropriate, also. We have argued this method with USDA, *but there is no plan to change procedures.* We have no choice but to follow their instructions and cannot instruct staff to stop this procedure. (Emphasis added)

Defendant Clayton K. Yeutter, current Secretary of the USDA and the person respon-

sible for the adoption and implementation of the Food Stamp Program (Mr. Yeutter replaced Richard E. Lyng as Secretary of the USDA and was substituted for plaintiff Lyng pursuant to Rule 25(d)(1), Fed.R.Civ. P.), responded to plaintiffs' request for admissions by admitting:

> 17. It is defendant Lyng's directive that state agencies follow the policy ..., despite the fact that cash assistance overpayment amounts are subject to recovery.
>
> 18. Defendant Lyng has followed the policy ... since state agencies first began establishing and collecting food stamp overissuance claims.

In a September 9, 1987 letter, Paul J. Willmarth of Missouri DFS made the following statement regarding the Secretary's method:

> We consider this method of determining claims inappropriate, also. We have argued this method with the USDA, *but there is no plan to change procedures. We have no choice but to follow their instructions and cannot instruct staff to stop this procedure.* (emphasis added)

The record before this Court contains many requests from local, state and regional directors for clarification of the method of calculation. Written clarifications in response to these queries mandate compliance with the Secretary's method. Bonny O'Neil, as Director of Program Planning, Development and Support Division of the USDA, responded to a query as follows:

> The state agency must compute the food stamp overissuances using the actual PA [Public Assistance] payments received by the household.

November 19, 1985 letter to Allen Ng, Regional Director of Family Nutrition Programs—Western Region.

The record establishes that the Secretary's method is the national policy on calculating food stamp overissuance claims. This method is not the result of a change in policy which would necessitate compliance with the FOIA. Although some state and regional bureaucrats find fault with the Secretary's method, their queries to the U.S.D.A. are consistently responded to with affirmances of the Secretary's method. This Court holds that the method by which the Secretary computes claims does not violate the APA.

## C. The Secretary's Method of Computing Food Stamp Over-issuances is Constitutional

■ Plaintiffs allege that the Secretary has "arbitrarily disregarded law and regulations" in violation of the due process guaranteed by the Constitution. Plaintiffs' just compensation claim alleges that the Secretary has charged plaintiffs with food stamp over-issuance claims "in excess of amounts they actually owe." Plaintiffs' Article I claim alleges that the Secretary "has gone beyond the scope of his executive power and legislative rules which contradict the laws promulgated by Congress."

The acts which provide a basis for each of plaintiffs' Constitutional contentions have been addressed in the previous section of this Order. These assertions of Constitutional violations have no merit.

Defendants have not acted in an arbitrary or capricious manner. Defendants' method of calculation soundly evaluates plaintiffs' actual needs during a particular period of time. Defendants are administering a colossal benefit program in accordance with substantive Congressional directives.

Plaintiffs' argument that the Secretary's policy constitutes a constitutionally impermissible "taking" compels closer scrutiny. Plaintiffs possess a cognizable property interest in the receipt of food stamps to which they are entitled. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). According to plaintiffs, those members of plaintiff class who repay AFDC overpayments when they no longer participate in the Food Stamp Program are unconstitutionally penalized.

Plaintiffs argue that "state action to recover any amounts which exceed plaintiffs'

actual overpayment amount constitutes a taking of plaintiffs' property without just compensation." Yet, to be precise, a taking could only occur when AFDC payments are recouped and not offset by increased food stamp allotments. For example, plaintiff Rosie Wilkes made a $115.00 cash payment to AFDC for prior overpayments of AFDC benefits. Ms. Wilkes was no longer receiving food stamps at the time of this repayment. Plaintiffs would calculate the portion of this repayment that was paid to Ms. Wilkes in a particular month, and if during that month Ms. Wilkes would have received $x more food stamps had these recouped AFDC dollars not been received, then plaintiffs reason Ms. Wilkes is entitled to $x of food stamps. Thus, the issue is whether the larger amount of food stamp benefits which plaintiffs seek is an entitlement, and whether it was taken without just compensation.

The Supreme Court has articulated a four-part test for identifying a violation of the taking clause of the Fifth Amendment: (1) Is there a property interest protected by the Fifth Amendment Taking Clause? (2) If so, does the challenged action effect a taking of that property interest? (3) If there is a taking, is it for public use? (4) If there is a taking for public use, does the statute provide for adequate compensation? *Ruckelshaus v. Monsanto*, 467 U.S. 986, 104 S.Ct. 2862, 2871, 81 L.Ed.2d 815 (1984). Plaintiffs' constitutional challenge to the Secretary's method is thwarted by the first prong of this test; plaintiffs have no cognizable Fifth Amendment property interest.

In order to determine whether plaintiffs were deprived of constitutionally safeguarded property interests, this Court must evaluate plaintiffs' relation to the additional food stamps they desire:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution.

*Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests in the receipt of welfare benefits are defined by statutory and administrative standards. *Id.* 92 S.Ct. at 2708; *see also Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Plaintiffs are only entitled to the additional food stamps they seek if the Food Stamp Act or USDA regulations establish a right to receive a larger amount of food stamps than those distributed under the Secretary's method.

Plaintiffs have not established the existence of a legal entitlement to the additional food stamps they could receive if the Secretary chose another method of calculating overissuance claims. As discussed previously, the Secretary's method is warranted by the express language of the Food Stamp Act. This method determines a household's actual needs based on income actually received at a particular moment. The Secretary is obliged to count all income plaintiffs actually receive in the month that they receive it. This action by the Secretary does not deny plaintiffs benefits which plaintiffs are otherwise entitled to receive. The express language of the statute does not create an entitlement to additional food stamps during the months a family receives AFDC overpayments. Nor does any regulation brought to this Court's attention.

This is not a case where welfare beneficiaries are brutally deprived of sustenance in a time of need. Indeed, the Secretary's method takes into account the actual need of food stamp recipients at a particular point in time.

There is no basis for plaintiffs' argument that they are entitled to additional food stamps during the months that they receive AFDC overpayments. Hence, the non-receipt of these additional food stamps cannot constitute a taking under the Fifth Amendment.

### AFDC overpayments are Not Loans

■ Plaintiffs next contend that AFDC overpayments fit the definition of a "loan"

under 7 U.S.C.A. § 2014(d) (West Supp. 1987), which provides in pertinent part:

> Household income for purposes of the food stamp program shall include all income from whatever source excluding only ... (4) all loans other than educational loans on which repayment is deferred.

Regulation 7 C.F.R. § 273.9(b) and (c)(4) (1987) reiterates this statutory mandate:

> (b) Definition of Income. Household income shall mean all income from whatever source excluding only items specified in paragraph (c) of this section.
>
> (c) Income exclusions. Only the following items shall be excluded from household income and no other income shall be excluded:
>
> (4) All loans, including loans from private individuals as well as commercial institutions other than educational loans on which payment is deferred.

The Secretary has interpreted the loan exception as *not* including AFDC overpayments. Plaintiffs urge this Court to deem inadvertent AFDC overpayments loans.

The question under *Chevron* is not whether plaintiff presents a plausible alternative classification of AFDC overpayments but, rather, whether the Secretary's classification is reasonable:

> a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Chevron,* 104 S.Ct. at 2782 (citations omitted). The existence of a regulation describing all AFDC payments as income lend credence to a determination that AFDC overpayments are also includable as income.

Furthermore, in examining the intent of the parties when AFDC payments are requested and then made, it is apparent that the governmental entity is not in the business of loaning money to recipient families. Plaintiffs contort this situation by reasoning that as recipients have an obligation to repay any overpayment, the status of the parties in this transaction are that of a lender and a debtor. However, it is not the desire of the government to distribute any greater funds than those for which a recipient is eligible. Neither error, inadvertence, nor fraud alter the underlying nature of this transaction. *See Biggs v. Lyng,* 823 F.2d 15, 19 (2nd Cir.1987). The Secretary's refusal to exclude AFDC overpayments from income by classifying such payments as loans is reasonable.

### V. *Conclusion*

To summarize: Defendants' method of calculating food stamp over-issuance claims adheres to the purpose of the Food Stamp Act and the AFDC program. The Secretary's method of calculation is reasonable and follows the express language of the Food Stamp Act. AFDC overpayments are not loans. The Secretary's inclusion of all AFDC payments as income is not a change of policy or law; it is simply an interpretation of a properly promulgated statute. There has been no violation of the Administrative Procedure Act. Finally, plaintiffs' Constitutional arguments are without merit.

Accordingly, it is hereby

ORDERED that summary judgment is granted in favor of defendants.