STATE of Minnesota, Respondent (C2–95–2725, C4–95–2726, C6–95–2727, C0–96–28), Appellant (C1–96–23, C3–96–24, C5–96–25, C9–96–27),

v.

Christopher Edward HARVEY, Appellant (C2–95–2725), Respondent (C1–96–23),

Ida Elaine Scherbring, Appellant (C4–95–2726), Respondent (C5–95–25),

Katie Lynn Przybylski, Appellant (C6–95–2727), Respondent (C3–96–24),

Whitley Shay Thompson, Respondent (C9–96–27),

Darrick (NMN) Thompson, Appellant (C0–96–28).

Nos. C2–95–2725, C4–95–2726, C6–95–2727, C1–96–23, C3–96–24, C5–96–25, C9–96–27 and C0–96–28.

Court of Appeals of Minnesota.

May 14, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, Julius E. Gernes, Winona

County Attorney, Nancy L. Buytendorp, Assistant County Attorney, Winona, for State.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for Harvey, Scherbring, Przybylski, Thompson, Thompson.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

DAVIES, Judge.

This is a consolidated appeal from five guilty pleas to criminal welfare fraud. The appeals raise issues concerning the proper calculation of restitution. We affirm.

## FACTS

### Christopher Edward Harvey and Katie Lynn Przybylski

Przybylski and Harvey lived with their child for several months during which Przybylski received AFDC from Winona County. Przybylski misrepresented that Harvey was not living in the home and thus her benefits through the "absent parent" AFDC program were unlawful. During the period in question, Harvey paid to Winona County child support, which only partially reimbursed the county for its AFDC payments.

Przybylski pleaded guilty to one count of welfare fraud in violation of Minn.Stat. §§ 256.98, subd. 1, 393.07, subd. 10(c)(1), and 609.52, subd. 3(2) (1994). Harvey pleaded guilty to one count of aiding and abetting welfare fraud in violation of the same statutory provisions. In separately titled cases, the court held them jointly and severally liable for restitution in "the amount [Winona County] actually lost due to * * * [their] conduct."

The court, in calculating the amount of that loss (and, thus, the amount of restitution owed), accepted Harvey's argument that the restitution amount should reflect only the AFDC benefits in excess of the amounts to which Przybylski would have been entitled had she properly claimed benefits under the "unemployed parent" AFDC program (another program apparently available to her).

The State on appeal argues that the entire amount of benefits she received should constitute the restitution amount, without setting off benefits otherwise lawfully available.

The court rejected the parents' argument that the restitution amount should be reduced by 100 percent of the amount of child support Harvey paid to the county. The court ruled that those payments were irrelevant to restitution. Harvey and Przybylski appeal that decision.

### Ida Elaine Scherbring

Scherbring pleaded guilty to welfare fraud in violation of the same statutory provisions involved in the Harvey and Przybylski cases. She similarly misrepresented to Winona County that the father of her child was absent from her home (he is not a party). She appeals the restitution order on the same ground that Harvey and Przybylski do: that restitution should have been reduced by the child support payments that the child's father made during the period of the offense.

The State, in turn, cross-appeals the restitution order on two grounds. The first is an issue involved in the Harvey and Przybylski cases: that the restitution amount should equal the total amount of benefits received, not just the benefits in excess of those Scherbring was properly entitled to under the unemployed parent program.

The State's second issue on appeal concerns the trial court's method of calculating the overallotment of food stamps. Food stamp allotment is limited in part by unearned income: the lower the unearned income (which includes AFDC payments), the higher the food stamp allotment. The trial court ruled that the AFDC overpayments, which must now be repaid in restitution, should not be considered in the retroactive calculation of unearned income for the period in question. The State argues that the AFDC overpayments should be factored into the calculation because they constitute actual income received.

### Whitley Shay Thompson and Darrick NMN Thompson

The Thompsons wrongfully failed to report family earnings during the time they received AFDC and food stamp benefits from Winona County. They both pleaded guilty (in separately titled cases) to wrongfully obtaining assistance in violation of essentially the same statutory provisions involved in the other cases. The State again appeals because the trial court made the same ruling as in the Scherbring case with respect to calculation of the food stamp overallotment and the resulting restitution liability.

### ISSUES

I. Should the amount of restitution ordered after a welfare fraud conviction be reduced by the amount of benefits to which the recipient would have been lawfully entitled?

II. When calculating the amount of restitution for welfare fraud resulting from a misrepresentation that one parent was absent from the household, should an obligor parent's child support payments be offset against the restitution owed?

III. When calculating a food stamp overallotment, should the court consider fraudulently obtained AFDC payments as part of the recipient's unearned income during the period in question, even though those amounts must now be repaid as restitution?

### ANALYSIS

■ A trial court has broad discretion in awarding restitution. *In re Welfare of D.D.G.*, 532 N.W.2d 279, 280 (Minn.App. 1995), *review denied* (Minn. Aug. 30, 1995). The issues presented in this appeal, however, are questions of law, which we review de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

■ When deciding restitution, a trial court must consider

(1) the amount of economic loss sustained by the victim as a result of the offense; and

(2) the income, resources, and obligations of the defendant.

Minn.Stat. § 611A.045, subd. 1 (1994). If a trial court seeks, in setting restitution, to compensate for loss, as it did in these consolidated cases, then the amount should be

based on the victim's injury. *State v. Fader*, 358 N.W.2d 42, 48 (Minn.1984).

Under the criminal welfare fraud provisions, the "amount of assistance incorrectly paid" is defined as

> the difference between the amount of assistance actually received on the basis of misrepresented or concealed facts and the amount to which the recipient would have been entitled had the specific concealment or misrepresentation not occurred.

Minn.Stat. § 256.98, subd. 3 (1994). Minn. Stat. § 256.98, subd. 4 (1994), provides for recovery of that amount *"as a debt* due the county or the state" (emphasis added). The debt amount is also the proper restitution figure.

## I. Offset of AFDC Restitution by Amount of Lawful Benefits

■ In those cases involving a claimed offset of lawful benefits, the trial court ruled that under Minn.Stat. § 256.98, subd. 3, the restitution amount should reflect only the excess benefits the recipients received over what they would have received under the "unemployed parent" program. We agree. Minn.Stat. § 611A.045, subd. 1, requires the trial court to consider the victim's loss when making a restitution decision. Minn.Stat. § 256.98, subd. 3, provides for consideration of what the recipient would have been entitled to had the misrepresentation not occurred; the statute's plain meaning requires consideration of the recipient's eligibility for non-fraudulent benefits.

For the proposition that the restitution award should equal the full amount of AFDC disbursed, the State relies on the supreme court's decision in *State v. Ibarra*, 355 N.W.2d 125 (Minn.1984). In *Ibarra*, the appellant had been convicted of welfare fraud for misrepresenting that her children's father was absent from the household. *Id.* at 128. She argued that her conviction should be reversed on the ground that the State did not prove her ineligible for *any* benefits under *any* program. *Id.* at 131. The supreme court rejected her argument, holding that the State must only prove ineligibility under the program through which assistance was obtained. *Id.* at 132.

We agree with the trial court that *Ibarra* does not mandate recovery of all AFDC benefits disbursed, without setoff. Although the case holds that the State need not prove, *as an element of the crime*, that the recipient was not eligible for benefits under any program, the *Ibarra* court did not address the restitution issue we face here, that is, calculating the net "assistance incorrectly paid."

The State also argues that it is impossible to view respondents as "eligible" retroactively under the "unemployed parent" program because that program requires proof of participation in job search and training efforts. Respondents did not do that here and the State claims they might have benefitted from the "unemployed parent" program and thus needed less assistance than that with which the trial court credited them.

■ Although the State's concern is legitimate, we must construe criminal statutes strictly against the state as long as that construction does not render them meaningless. *State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993). Further,

> [w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1994); *accord McCaleb v. Jackson*, 307 Minn. 15, 17 n. 2, 239 N.W.2d 187, 188 n. 2 (1976). The statute here requires an offset of restitution by the amount to which the recipient would have been entitled absent the fraud; we cannot accept the State's argument that this only refers to some other amount under the same program, especially because the programs, though different in name, are all related and administered by the same agency.

## II. Offset of AFDC Restitution by Child Support Payments

■ Under Minn.Stat. § 256.74, subd. 5 (1994), a recipient of public assistance assigns to the county the rights to child support payments in order to reimburse the county for its AFDC payments to the recipient. Thus, once the assignment takes place, the AFDC recipient has no remaining rights to

the child support payments unless they exceed AFDC benefits. There is no suggestion here that support payments exceeded lawful—and retained—AFDC payments. We therefore hold that the support payments should not be considered for the purposes of calculating the amount of restitution owed.

### III. Inclusion of AFDC Overpayments as Income in Calculation of Food Stamp Restitution Amount

■ Although the food stamp program is federal, the crime of fraudulently obtaining food stamps is prosecuted under state law. Specifically, Minn.Stat. § 393.07, subd. 10(c) (1994), provides that food stamp fraud is considered a violation of Minn.Stat. § 256.98, the provision involved in the above two issues. Thus, the restitution considerations are the same.

Food stamp allotment calculations include consideration of the recipient's "unearned income," which includes AFDC payments. In these cases, the trial court concluded that because respondents must now, as a result of their convictions, pay back some of the AFDC payments, those amounts should not be included in respondents' "unearned income" when retroactively determining the food stamp overallotment for restitution.

The State relies heavily on *Abernathy v. Yeutter*, 725 F.Supp. 459 (W.D.Mo.1989). In *Abernathy*, the court affirmed the Secretary of Agriculture's interpretation of a federal regulation [1] on calculation of food stamp overallotments, which included AFDC overpayments as part of the recipient's income (used to determine the proper food stamp allotment) for the period in question. *Id.* at 469.

We are not persuaded to follow this nonbinding civil precedent in the present case. The *Abernathy* court, as was required, deferred heavily to the Secretary's interpretation. *Id.* at 464. We are not so restricted, as we review the legal issue de novo. Additionally, we believe that double restitution would result if the ordered restitution of AFDC overpayments is ignored in determining the food stamp overallotment. Restitution must aim to compensate the State for its actual loss, and no more.

We hold that in calculating food stamp overallotment under Minn.Stat. § 256.98, subd. 3, the AFDC overpayments during that period, which now must be repaid in restitution, should not be considered part of the recipient's "unearned income."

### DECISION

The restitution amount should be no more than the excess amount received because of the fraud. Child support payments to a county do not offset the restitution obligation unless those payments are in excess of lawful AFDC. When calculating the food stamp overallotment, fraudulently received AFDC benefits that must now be repaid as restitution are not part of the recipient's "unearned income" for the period in question.

**Affirmed.**

1. This regulation, 7 CFR § 273.18(c)(1)(ii), is similarly worded to our statute on the determination of food stamp overallotment, requiring comparison of "the difference between the allotment the household received and the allotment the household should have received."