*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2060**

Lana Dawn Hansch Barnes, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 29, 2016
Affirmed
Peterson, Judge**

Chisago County District Court
File No. 13-CR-12-175

Lana D. Hansch Barnes, Scandia, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Nicholas B. Wanka, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Peterson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from the denial of postconviction relief, pro se appellant argues that the postconviction court erred in (1) concluding that the evidence was sufficient to support her convictions of two counts of felony theft by false representation; (2) rejecting her challenge to the restitution award; and (3) rejecting her claims regarding entrapment,

violation of her Fourth Amendment rights, a discovery violation, and the constitutionality of Minn. Stat. § 256B.0659, subd. 3(a)(1) (Supp. 2009). We affirm the denial of postconviction relief and deny appellant's motions to obtain additional discovery and to include additional information in her addendum.

## FACTS

Appellant Lana Dawn Hansch Barnes's husband A.B. suffered from a number of long-term ailments and was eligible to participate in the Minnesota Medical Assistance program (Medicaid), which pays for home-care services for eligible recipients, including personal care assistant (PCA) services. *See* Minn. Stat. § 256B.0651, subds. 1(d), 2(4) (2008 & Supp. 2009). A.B. was authorized to receive up to 14.5 hours of PCA services every day through Medicaid. A.B. resided at home with appellant, and appellant acted as A.B.'s responsible party for Medicaid purposes. As A.B.'s spouse and responsible party, appellant was ineligible to receive payment from Medicaid for providing PCA services to A.B. *See* Minn. Stat. § 256B.0659, subd. 3(a)(1).

A.B. received PCA services through Nurse Staffing Solutions Homecare Services, Inc., (Nurse Staffing) a personal-care-provider organization (PCPO). *See* Minn. Stat. § 256B.0659, subds. 1(k), 21, 24, 25 (Supp. 2009). In 2005, appellant obtained PCA employment documents for her son, F.B., from Nurse Staffing. F.B. completed and signed the documents, which included an application for employment with Nurse Staffing and a "PCA Enrollment Application," and he submitted to a background study. *See* Minn. Stat. § 256B.0659, subd. 11(a) (Supp. 2009) (stating requirements for a person to become a PCA).

2

F.B. then began providing PCA services to A.B. through Nurse Staffing. Nurse Staffing provided its PCAs with timesheets to be completed and signed by the PCA and the responsible party. The timesheets instruct the signatories to "[r]eview the completed time sheet for accuracy before signing," contain the notice that "[i]t is a federal crime to provide false information on PCA billings for Medical Assistance payment," and state that "[y]our signature verifies the time and services entered above are accurate."

In November 2006, F.B. obtained a job with a trucking company, which kept him on the road for up to four weeks at a time, and he was only in Minnesota for a few days every year after 2006. After F.B. began the trucking job, appellant completed F.B.'s timesheets and submitted them to Nurse Staffing, which submitted them to Medicaid for reimbursement. Based on the timesheets, Nurse Staffing issued paychecks in F.B.'s name, and appellant endorsed and cashed the checks.

Appellant was charged with seven counts of felony theft by false representation (over $5,000) in violation of Minn. Stat. § 609.52, subds. 2(3)(iii), 3(2) (2008).[1] At a pretrial hearing, the state dismissed counts one through five, and the parties agreed to submit counts six and seven to the district court for decision based on documentary evidence submitted pursuant to a stipulation. Appellant agreed that, if she was convicted, the state could seek restitution on all seven counts. Count six alleged that, from July 1, 2009, through December 31, 2009, appellant represented to Nurse Staffing that F.B. provided PCA services to A.B. and that, based on those representations, Nurse Staffing

---

[1] Minn. Stat. § 609.52, subd. 3, was amended in 2009, but the amendment did not modify subdivision 3(2). 2009 Minn. Laws ch. 119, § 9, at 1804.

3

received more than $5,000 in Medicaid reimbursement from the Minnesota Department of Human Services (DHS).  Count seven alleged that, from January 1, 2010, through May 31, 2010, appellant represented to Nurse Staffing that F.B. provided PCA services to A.B. and that, based on those representations, Nurse Staffing received more than $5,000 in Medicaid reimbursement from the DHS.

The district court found,

> During the time frame of Counts [six] and [seven], the vast majority of the PCA hours [appellant] claimed were provided to A.B. by [F.B.] were false because [F.B.] did not provide the PCA hours, either due to conflicts with his trucking job, or because A.B. was hospitalized and not entitled to receive PCA services.

Nurse Staffing received Medicaid reimbursement of $14,945.04 for the period between July 1 and December 31, 2009, and $8,917.92 for the period between January 1 and May 31, 2010.  A.B. was hospitalized continuously from August 21 through September 21, 2009, September 25 through October 24, 2009, March 31 through May 5, 2010, and May 5 through May 27, 2010.  PCA services provided in a hospital are not eligible for Medicaid reimbursement.  Minn. Stat. § 256B.0651, subd. 3(1), (3) (2008 & Supp. 2009).

The district court found appellant guilty of counts six and seven and ordered her to pay $79,832.35 in restitution.  Appellant did not file a direct appeal.  Two years after sentencing, appellant filed a petition for postconviction relief.  The postconviction court denied appellant's petition without a hearing.  This appeal followed.  Appellant has filed three motions in this court, one to obtain additional discovery and two to be permitted to include additional information in the addendum.

4

**DECISION**

An appellate court reviews the denial of a petition for postconviction relief for an abuse of discretion. *Colbert v. State,* 870 N.W.2d 616, 621 (Minn. 2015). "A postconviction court abuses its discretion when its decision is based on an erroneous application of the law or is against logic and the facts in the record." *Nunn v. State,* 868 N.W.2d 230, 232 (Minn. 2015). A hearing is not required on a postconviction petition if "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014).

**I.**

When considering a claim of insufficient evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction," was sufficient to allow the fact-finder to reach the verdict that it reached. *State v. Caine,* 746 N.W.2d 339, 356 (Minn. 2008) (quotation omitted); *see also State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011) (stating that, when evaluating the sufficiency of evidence, the same standard of review applies to court trials as to jury trials). We must assume that the fact-finder believed the state's witnesses and did not believe any contrary evidence. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013). We will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the crime charged. *Bernhardt v. State,* 684 N.W.2d 465, 476-77 (Minn. 2004).

A person commits theft by "obtain[ing] for the actor or another the possession, custody, or title to property of . . . a third person by intentionally deceiving the third person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made." Minn. Stat. § 609.52, subd. 2(3) (2008). "'False representation' includes . . . the preparation or filing of a claim for reimbursement . . . for medical care provided to a recipient of medical assistance under chapter 256B, which intentionally and falsely states the costs of or actual services provided by a vendor of medical care . . . ." *Id.*, subd. 2(3)(iii).

"Intent must be determined from all the objective facts and circumstances, including the defendant's conduct and/or statements at the time of the act." *State v. Whisonant,* 331 N.W.2d 766, 768 (Minn. 1983). "Because intent is a state of mind," it is generally proved by circumstantial evidence. *State v. Essex,* 838 N.W.2d 805, 809 (Minn. App. 2013), *review denied* (Minn. Jan. 21, 2014). "A conviction based on circumstantial evidence warrants stricter scrutiny." *State v. Smith,* 619 N.W.2d 766, 769 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001). A conviction based on circumstantial evidence requires that the circumstances proved be consistent with a defendant's guilt and inconsistent with any other rational or reasonable hypothesis. *State v. Clark*, 755 N.W.2d 241, 257 (Minn. 2008).

To determine whether the circumstances proved are consistent with a defendant's guilt and inconsistent with any other rational or reasonable hypothesis, the court applies a two-step analysis. *State v. Silvernail,* 831 N.W.2d 594, 598 (Minn. 2013). First, the court determines the circumstances proved, giving due deference to the fact-finder and construing the evidence in the light most favorable to the verdict. *Id.* at 598-99. Second,

6

the court determines whether the circumstances proved are consistent with guilt and inconsistent with any other rational or reasonable hypothesis. *Id.* at 599. This analysis requires that the court look at the circumstances proved not as isolated facts but rather as a "complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude . . . any reasonable inference other than guilt." *State v. Al-Naseer,* 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). This analysis gives "no deference to the fact finder's choice between reasonable inferences." *Silvernail,* 831 N.W.2d at 599 (quotation omitted).

Appellant argues that she did not intentionally deceive Nurse Staffing because A.B. received the highest level of care and she did not claim more than the approved number of hours for PCA services. But appellant's convictions were not based on either of those factors. Appellant was convicted because she submitted timesheets representing that F.B. provided PCA services to A.B. during times when F.B. was out of town or A.B. was hospitalized.

The postconviction court concluded:

> When looking at all of the circumstances proved, the reasonable inferences from [appellant's] conduct establish that [appellant] acted with intent to defraud. [Appellant] filled out timesheets for her son, [F.B.], claiming that PCA services for A.B. were being performed during the times when [F.B.] was away driving truck and when A.B. was receiving care while hospitalized. [Appellant] claimed care was not only being provided by [F.B.], but also by her, yet [appellant] could not be approved and did not apply to be approved as A.B.'s PCA caregiver. After submitting the false timesheets, [appellant] endorsed and cashed paychecks for the fraudulently claimed services by working with her son [F.B.] to allow her to cash his checks with his bank. The utter volume of [appellant's]

7

> fraudulent claims defeats her present argument that the payments received by her were the result of sloppy bookkeeping. [Appellant's] attacks regarding the credibility of the State's witnesses fails to establish any rational basis other than guilt. This Court as the trier-of-fact considered all of the evidence [that] the State and [appellant] presented at the trial. This Court found credible the State's evidence, while considering [appellant's] evidence as unbelievable, which this Court was free to reject.

We agree with the postconviction court's reasoning and its conclusion that appellant acted with intent to defraud.

Appellant also argues that the evidence was insufficient to convict her of theft because the record does not show that she received funds or was paid for providing PCA services to A.B. But the record shows that checks were issued in F.B.'s name based on fraudulent timesheets. And F.B. stated in an affidavit that appellant completed and submitted those timesheets. He also stated that appellant cashed the checks and kept the proceeds for herself, and the record contains bank records that support this statement. The circumstances proved are consistent with guilt and inconsistent with any other rational or reasonable hypothesis.

## II.

The postconviction court denied appellant's restitution challenge as untimely because she failed to challenge the restitution order within the 30-day time limit of Minn. Stat. § 611A.045, subd. 3(b) (2008). "[A] defendant who fails to timely challenge restitution under section 611A.045, subdivision 3(b), may not challenge restitution in a postconviction-relief petition." *State v. Maddox*, 825 N.W.2d 140, 144 (Minn. App. 2013).

8

Because appellant did not challenge the restitution order within 30 days, the postconviction court properly denied the challenge as untimely.

Appellant's restitution challenge also fails on the merits. This court reviews a district court's restitution award for an abuse of discretion. *State v. Miller*, 842 N.W.2d 474, 477 (Minn. App. 2014), *review denied* (Minn. Apr. 15, 2014). In determining the amount of restitution, the district court shall consider "(1) the amount of economic loss sustained by the victim as a result of the offense; and (2) the income, resources, and obligations of the defendant." Minn. Stat. § 611A.045, subd. 1(a) (2008).

The evidence supports the postconviction court's finding that appellant "fail[ed] to show any grounds that may establish she was misled about the parties' agreement that the Court could consider awarding restitution for all of the counts." Appellant also asserted before the postconviction court that the restitution award was unfair based on her income and *State v. Harvey*, 547 N.W.2d 706 (Minn. App. 1996), *review denied* (Minn. Aug. 6, 1996). Because appellant's objection is to the total amount of restitution, which was supported by an affidavit submitted by the DHS, we cannot conclude that the district court abused its discretion in determining the amount of restitution. *See State v. Maidi*, 537 N.W.2d 280, 285-86 (Minn. 1995) (concluding that the district court properly considered the defendant's ability to pay when it considered the defendant's resources in imposing a payment schedule even though it was mathematically impossible for the defendant to pay the full restitution award at the monthly installment payment ordered). In *Harvey*, a welfare-fraud case, this court held that restitution was limited to the amount of excess benefits paid and that Minn. Stat. § 611A.045, subd. 1 (1994), "require[d] an offset of

9

restitution by the amount to which the recipient would have been entitled absent the fraud." 547 N.W.2d at 709. Here, unlike in *Harvey*, appellant was not entitled to any payment for PCA services.

## III.

*Entrapment*

To raise an entrapment defense, a criminal defendant must first show by a preponderance of the evidence "that the government induced the commission of the crime." *State v. Vaughn,* 361 N.W.2d 54, 57 (Minn. 1985). Inducement requires a showing that "the state did something more than merely solicit the commission of a crime." *State v. Olkon,* 299 N.W.2d 89, 107 (Minn. 1980). Rather, the state must have persuaded, badgered, or pressured the defendant to commit a crime. *Id.*

Appellant claims that she was misled by a Nurse Staffing employee and social workers into believing that her conduct was acceptable. Even if these individuals could be considered state actors, there is no record evidence that any of them persuaded, badgered, or pressured appellant to submit the fraudulent timesheets.

*Fourth Amendment Search and Seizure*

Because appellant did not raise the Fourth Amendment issue before trial, it is forfeited. *See State v. Lindquist*, 869 N.W.2d 863, 867 (Minn. 2015) (stating that defendant may forfeit constitutional challenge to evidence by failing to make timely objection).

Notwithstanding the forfeiture, we address the merits. Appellant argues that A.B.'s medical records and F.B.'s employment records were illegally obtained. Appellant cannot object to the seizure of these records. Fourth Amendment rights are personal and cannot

10

be vicariously asserted on behalf of another person. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022 (2014). To assert a violation of Fourth Amendment rights, a defendant must show that the search or seizure infringed upon the defendant's own legitimate expectation of privacy. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 430 (1978). "A defendant who seeks the suppression of evidence may not assert the violation of the Fourth Amendment rights of a third party but must allege some violation of his own rights." *State v. Reynolds*, 578 N.W.2d 762, 764 (Minn. App. 1998). Appellant has not shown that the seizure of her husband's and her son's records violated her Fourth Amendment rights.

Appellant also argues that her bank records were illegally seized. But the attorney general is authorized to subpoena certain bank records that are relevant to a legitimate law-enforcement investigation. Minn. Stat. § 8.16, subd. 1 (2008).

*Discovery Violation*

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). A *Brady* violation has three components: (1) the evidence must be favorable to the accused because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice to the accused must have resulted. *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005). All three components must be met to establish a *Brady* violation. *Id.* Because appellant has not specifically identified what material evidence was not disclosed by the state, her discovery-violation claim fails.

11

*Constitutionality of Minn. Stat. § 256B.0659, subd. 3(a)(1)*

Appellant argues that Minn. Stat. § 256B.0659, subd. 3(a)(1) is discriminatory in the employment context because it prohibits a spouse from being employed as a PCA and also because it potentially deprives an ailing spouse from receiving the highest level of care. Appellant cites no legal or factual support for these contentions. The statute does not prohibit appellant from being employed as a PCA; it only makes her ineligible to receive Medicaid reimbursement for providing PCA services to her husband. And no evidence in the record indicates that PCAs who met the statutory requirements for reimbursement did not provide a high level of care for A.B. The party challenging the constitutionality of a statute must show that it is unconstitutional beyond a reasonable doubt. *SooHoo v. Johnson*, 731 N.W.2d 815, 821 (Minn. 2007). Appellant has not met this burden.

## IV.

*Motion to Obtain Additional Discovery*

Appellant requests that this court order Chisago County to disclose A.B.'s medical records and records relating to the PCA services provided to him because they would show that A.B. received the highest level of care at home. "The record on appeal consists of the papers filed in the district court, the offered exhibits, and the transcript of the proceedings, if any." Minn. R. Crim. P. 28.02, subd. 8. This court may not consider matters outside of the record. *State v. Breaux,* 620 N.W.2d 326, 334 (Minn. App. 2001) (stating that "matters not part of the record must be stricken" (quotation omitted)). Because the requested records were not made part of the record in the district court, we deny appellant's motion.

We also note that the requested records are not relevant to appellant's convictions. As already addressed, appellant's convictions were not based on the level of care provided to A.B. The convictions resulted because appellant submitted timesheets representing that F.B. provided PCA services to A.B. during times when F.B. was out of town or A.B. was hospitalized.

*Motions to Include Additional Information in Addendum*

Although appellant has submitted motions that are titled "Motion to Accept Additional Information for Addendum" and "Motion to Accept Additional Information into Addendum," she has not identified any additional documents that she seeks to have included in the addendum. *See* Minn. R. Civ. App. P. 130.02(a) (listing proper contents of addendum). In one motion, appellant argues that she should not have been convicted because the PCPO is the party that bills the DHS and provides the DHS with information about costs of PCA services and services performed. Because the information provided to the DHS by the PCPO was based on appellant's fraudulent representations that F.B. provided the PCA services, appellant's argument lacks merit. In the second motion, appellant again addresses the level of care provided to A.B., which, as we have already explained, was not relevant to appellant's convictions.

**Affirmed.**

13