[No. A107616. First Dist., Div. One. May 4, 2005.]

THE PEOPLE, Plaintiff and Appellant, v.
LASHONDRA AKINS, Defendant and Respondent.

## COUNSEL

David Paulson, District Attorney, George Williamson, Chief Deputy District Attorney, and Joel S. Coble, Deputy District Attorney, for Plaintiff and Appellant.

R. Stevens Condie for Defendant and Respondent.

## OPINION

**STEIN, J.**—Pursuant to a negotiated plea, Lashondra Akins (defendant) pleaded no contest to one count of welfare fraud. The court placed her on probation for five years, on condition that she serve 90 days in county jail. It also ordered defendant to pay restitution to the Department of Health and Social Services of Solano County (Department) in the amount of $9,789. The People filed an appeal, contending that the court should have ordered restitution in the amount of $10,158, based upon the Department's calculation of overpayment of food stamps and cash benefits.

We shall hold that the court acted within the scope of its discretion to reduce the amount of restitution based upon its conclusion that the method the Department used to calculate the overpayment overstated its loss.

### FACTS

On October 11, 2001, the District Attorney of Solano County filed a complaint charging defendant with one count of welfare fraud (Welf. & Inst. Code, § 10980, subd. (c)(2)) and multiple counts of perjury (Pen. Code, § 118). The alleged fraud consisted of defendant's failure to disclose income she received from employment by Pacific Bell, and disability benefits.

On December 2, 2003, defendant entered a negotiated plea of nolo contendere to one count of welfare fraud, and the court granted the district attorney's motion to dismiss the perjury counts. On the date set for judgment and sentence, a dispute arose over the amount of victim restitution. The probation report recommended that defendant be ordered to pay $10,158 to the Department. That amount was based upon the Department's calculation of overpayment of food stamp and cash benefits to defendant. Defense counsel stated that this amount was incorrect pursuant to *People v. Hudson* (2003) 113 Cal.App.4th 924 [7 Cal.Rptr.3d 114] (*Hudson*), which was filed November 26, 2003, just a few days before the plea was entered. In *Hudson*, Division Three of this court had held the method used by the Department results in an overstatement of the loss, because it does not apply a 20 percent earned income deduction when calculating the amount of food stamps to which the defendant would have been entitled had she timely and accurately disclosed her income. The district attorney argued that defendant had stipulated to the stated amount of restitution as part of the plea. Defense counsel denied that defendant had stipulated to a specific amount of restitution. She also asserted that it was "disingenuous," in the face of *Hudson*, for the district attorney to insist on restitution in the amount calculated by the method used by the Department. She further argued that if another member of her office had stipulated to a specific amount based upon the Department's calculation, that would constitute ineffective assistance of counsel, and she asked to have conflict counsel appointed to represent defendant.[1] The court agreed that conflict counsel should be appointed, and put the matter over for a few weeks.

At the next hearing, on February 17, 2004, defendant was represented by the conflict counsel. The court and the parties discussed the possibility of allowing defendant to file a motion to withdraw the plea. The court also questioned whether, if the Department's calculation did not comply with *Hudson, supra,* 113 Cal.App.4th 924, it could, or should, enter an order requiring restitution in that amount, especially if defense counsel was unaware of *Hudson* when negotiating the plea. The court continued the matter for a contested hearing on a motion to withdraw the plea, but no motion was filed, and the court did not file an order setting aside the plea.

On March 23, 2004, the hearing focused entirely upon how the amount of restitution should be calculated, and what the correct amount should be. The district attorney conceded that the amount of $10,158 was not calculated in accordance with *Hudson, supra,* 113 Cal.App.4th 924, but argued that *Hudson* should not be applied "retroactively." The district attorney also argued that the court must accept the Department's calculation because it was

---

[1] The court did note that item 12 on the plea form stated "restitution $10,158," but neither the plea form nor the transcript of the change of plea is included in the record on appeal.

done in accordance with state and federal regulations. The court disagreed. It stated that there was no issue of retroactivity because *Hudson* was filed before the plea was negotiated, and before imposition of judgment and sentence. It added, "[O]ur job is to follow the law. And if our County is trying to make money off of those convicted of crime more than they're entitled to, then I can't be part of that and I don't want to be." The court concluded that it would order restitution based only upon a recalculation of the amount based upon a method that complied with *Hudson.*

Eventually, the district attorney submitted the Department's recalculation of the overpayment of food stamps, and of Aid to Families with Dependent Children (AFDC) or California Work Opportunity and Responsibility to Kids (CalWORKS) cash aid,[2] which reduced the food stamp overpayment to $3,059, and the cash overpayment to $6,730, for a total of $9,789. The court ordered that judgment and sentence be suspended and that defendant be placed upon probation for five years. It further ordered, among other things, that defendant pay the Department restitution in the amount of $9,789. The People filed a timely notice of appeal.[3]

ANALYSIS

The People contend that the court should have awarded restitution in the amount of $10,158 based upon the Department's calculation, despite the fact that the Department used a method expressly disapproved by Division Three of this court in *Hudson, supra,* 113 Cal.App.4th 924, and that it was an abuse of discretion to require a recalculation that reduced the restitution amount by $369. Before addressing the People's specific contentions on appeal we briefly review the relevant cases and legal principles.

*Summary of Relevant Law*

Penal Code section 1202.4, subdivision (f),[4] provides: "In every case in which a victim has suffered an economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the

---

[2] The district attorney apparently submitted worksheets to the court which showed the recalculation for AFDC/CalWORKS cash aid and food stamps overpayment. The worksheets included in the record on appeal, however, show only a recalculation of the food stamp overpayment, not the cash overpayment.

[3] Where the People do not challenge the validity of the court's order granting probation or seek its reversal, the appeal is not barred by Penal Code section 1238, subdivision (d). (*People v. Douglas* (1999) 20 Cal.4th 85, 92–94 [82 Cal.Rptr.2d 816, 972 P.2d 151].) The People may seek review of a restitution order as a postjudgment order affecting substantial rights of the People. (*People v. Hamilton* (2003) 114 Cal.App.4th 932, 937–938 [8 Cal.Rptr.3d 190].)

[4] Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

amount of loss claimed by the victim . . . or any other showing to the court . . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." The defendant has a right to a hearing to dispute the amount of restitution, and the court "may modify the amount, on its own motion or on the motion of the district attorney, the victim . . . or the defendant." (§ 1202.4, subd. (f)(1).) Restitution to the victim is mandatory, although the court retains discretion as to the amount. (*People v. Rowland* (1997) 51 Cal.App.4th 1745, 1751–1753 [60 Cal.Rptr.2d 351] [court may modify sentence based upon guilty plea to include victim restitution where none previously awarded because sentence without any victim restitution is invalid, and the defendant failed to show a reasonable probability that he would not have pleaded guilty if advised of victim restitution].)

■ A trial court's determination of the amount of restitution is reversible only if the appellant demonstrates a clear abuse of discretion. (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 992 [81 Cal.Rptr.2d 886].) No abuse of discretion is shown simply because the order does not reflect the exact amount of the loss, nor must the order reflect the amount of damages recoverable in a civil action. (*People v. Bernal* (2002) 101 Cal.App.4th 155, 162 [123 Cal.Rptr.2d 622].) In determining the amount of restitution, all that is required is that the trial court "use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious." (*People v. Thygesen, supra,* at p. 992; see *In re Brian S.* (1982) 130 Cal.App.3d 523 [181 Cal.Rptr. 778].) The order must be affirmed if there is a factual and rational basis for the amount. (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562 [65 Cal.Rptr.2d 679].)

In *People v. Crow* (1993) 6 Cal.4th 952 [26 Cal.Rptr.2d 1, 864 P.2d 80] (*Crow*), the trial court ordered the defendant, who had been convicted of welfare fraud, to pay the county restitution in the amount of $31,807. Our Supreme Court did not address any issue related to the restitution amount or method of calculation because the defendant challenged only the right of a governmental agency to receive victim restitution. The court first held that the defrauded county agency that paid the benefits is a "victim" entitled to restitution. (*Id.* at p. 960.) The second issue before the court was whether there was sufficient evidence to support the imposition of a one-year enhancement that applied if "the loss" to the victim exceeded $25,000. For the purpose of imposing the enhancement, the court agreed with the defendant that the county's "loss" was not the $32,929 in welfare and food stamp

benefits it had paid. (*Id.* at p. 961.) Instead, "the defrauded agency's 'loss' should be calculated by *subtracting the amount the government would have paid had no acts of fraud occurred* from the amount the government actually paid." (*Id.* at p. 962, italics added.) The court nevertheless found the evidence sufficient to support the enhancement because it was the defendant's burden to show that, absent the fraud, he would have been entitled to some benefits, and therefore that the loss did not exceed $25,000, and the defendant had failed to meet that burden. (*Id.* at pp. 962–963.)[5] Although the parties in this case disagree about how to calculate the amount the government would have paid, or that defendant would have been entitled to receive, in the absence of fraud, there is no dispute that the general measure of the government's loss in the case of welfare fraud is as stated in *Crow*.

In *Hudson, supra*, 113 Cal.App.4th 924, Hudson was convicted of welfare fraud consisting of the failure to report unemployment benefits and wages in applications for AFDC and food stamps submitted to the same defrauded agency that is the victim in this appeal, the Solano County Department of Health and Social Services. The parties agreed that the general formula discussed in *Crow, supra*, 6 Cal.4th 952, for calculating the defrauded agency's loss for the purpose of imposing an enhancement, i.e., subtracting the amount the government would have paid had no act of fraud occurred from the amount the government actually paid, also applies to the calculation of the Department's "loss" under section 1202.4. (*Hudson, supra*, at p. 928.) The trial court had ordered Hudson to pay $7,041 for the cash overpayment, and that amount was not disputed. (*Id.* at p. 927.) With respect to calculation of the overissuance of food stamps, a Department employee testified that, "under state regulations, recipients are entitled to have 20 percent of their earned income disregarded in calculating their food stamp entitlement. Recipients found to have underreported their income are not entitled to the 20 percent disregard. Accordingly, when the Department calculated the amount defendant owed in restitution for overissued food stamps it did not allow her the 20 percent disregard it would have applied had she properly reported her income." (*Id.* at pp. 926–927.) The trial court determined that the Department's "formula impermissibly penalized defendant for having failed to report income," and would result in a "windfall for the state," by understating the amount of benefits the Department would have paid defendant absent the fraud. It therefore directed the Department to recalculate "the amount she otherwise would have been entitled to, had she reported this . . . income." The Department refused to do so, asserting that its calculation was correct

---

[5] The defendant would also bear this burden in a hearing brought on the defendant's motion, challenging the amount of restitution pursuant to section 1202.4, subdivision (f)(1), if the facts relevant to the restitution amount are in dispute. In the proceedings below, the parties and the court proceeded on the assumption that the facts relevant to calculating the restitution amount were undisputed and the only issue concerned the appropriate method of calculation.

under the regulations it was required to follow. The trial court explained that without the recalculation it could not determine the amount the defendant would have been entitled to had she not committed fraud, and it therefore did not order any restitution for the food stamp overissuance. (*Id.* at p. 927.)

The People appealed, asserting, as they do in the instant appeal, that the court should have awarded the restitution based upon the Department's original calculation without giving the defendant the benefit of the 20 percent income deduction. (*Hudson, supra,* 113 Cal.App.4th at p. 928.) Division Three of this court rejected the People's argument that the restitution amount must be calculated in accordance with "regulations that deny defendant the benefit of the earned income disregard that would have been applied had she truthfully reported her income. Their repeated assertion that these regulations correctly define the amount of reimbursement under *Crow* ignores . . . that its calculations produced a larger figure than the difference between what defendant actually received and what she would have received absent the fraud." (*Hudson, supra,* at pp. 928–929.)

The court also rejected the argument that the restitution amount had to be calculated in accordance with the state and federal regulations that apply to the Department's administrative calculation of overpayments. The court stressed: "This appeal does not implicate the Department's right to calculate and collect whatever administrative penalties it may be entitled to impose under appropriate statutes and regulations. The issue here is whether the agency is entitled to have the court impose such penalties as *restitution* after a criminal conviction. *Crow* holds it is improper to do so."[6] (*Hudson, supra,* 113 Cal.App.4th at p. 929, italics added.) The *Hudson* court, therefore, rejected the People's assertion that the trial court was compelled to award restitution based upon the Department's original calculation. It nonetheless held it was an abuse of discretion not to award *any* restitution for the food stamp overissuance based upon the refusal of the Department to recalculate its loss. Instead, the trial court should have used its contempt powers to compel the Department to do a recalculation, or ordered the Department to

---

[6] We question whether the decision in *Crow, supra,* 6 Cal.4th 952, so "holds" since, as we have explained, the general description in *Crow* of how to determine the defrauded agency's loss was made only in the context of assessing the sufficiency of the evidence that the loss exceeded $25,000 for the purpose of imposing an enhancement based upon the amount of the loss. The court did not purport to discuss how to calculate victim restitution, a matter that is usually left to the discretion of the trial court.

Nonetheless, we find the reasoning of *Hudson, supra,* 113 Cal.App.4th 924, persuasive, to the extent that it recognizes that, in making that discretionary determination, it is reasonable for a court to reject the method of calculation used by the Department on the ground that, by not applying the 20 percent income disregard that is applied when claimants accurately and timely report income, the Department's calculation underestimates the amount to which defendant would have been entitled absent the fraud. Consequently, the Department overstates the amount of the loss for which it is entitled to restitution.

provide the data necessary for the court to do it, or simply approximated the amount needed to make the victim whole by discounting the figure submitted by the Department "to ensure that ordered restitution did not exceed the loss attributable to the fraud." (*Id.* at p. 930.)

### The People's Contentions

The People first contend that the terms of the negotiated plea included a stipulation that the amount of victim restitution would be $10,158. From this premise they assert that the court could not modify the restitution amount, even if, at the time for imposition of judgment and sentence, it was persuaded that this amount had been overstated by the Department, using the same method of calculation expressly disapproved in *Hudson, supra,* 113 Cal.App.4th 924.

█ The record is inadequate to allow this court to verify the factual premise that there was a stipulation to victim restitution in a specific amount. While the parties were debating whether there had been a stipulation to a specific amount, the court did refer to the plea form, and note that it listed "restitution $10,158." The change of plea form is not included in the record, and the transcript of the change of plea hearing does not include any reference to a stipulation to a specific amount of victim restitution. Without the plea form we cannot determine whether this was a stipulated amount or advice of a consequence of the plea. It is axiomatic that it is the burden of the appellant to provide an adequate record to permit review of a claimed error, and failure to do so may be deemed a waiver of the issue on appeal. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932]; *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1510 [234 Cal.Rptr. 779].)

█ Moreover, even assuming arguendo that defendant did stipulate to a specific restitution amount, we cannot determine on this record whether, at the time of the plea, defendant or her counsel were aware that the restitution amount was calculated according to a method disapproved just a few days earlier by the court in *Hudson, supra,* 113 Cal.App.4th 924. It is clear, however, that this fact was not disclosed *to the court* until the date set for imposition of judgment and sentence, when defense counsel first stated an objection to the restitution amount claimed by the Department as stated in the probation officer's report. The court, of course, always retains the discretion not to sentence in accordance with the terms of the plea, especially if it subsequently learns of facts or law that render the agreed sentence inappropriate. (§ 1192.5.) As a general rule, if the result will be an *increased* punish-

ment, the court must allow the defendant to withdraw the plea. (*Ibid.*) However, not every variation from the terms of the plea violates the defendant's rights. The variance must be "significant" in the context of the plea bargain as a whole. (*People v. Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861]; *People v. Lopez* (1998) 66 Cal.App.4th 615, 636 [78 Cal.Rptr.2d 66]), and the defendant, in order to have a plea set aside, must demonstrate that he would not have agreed to the terms had he been aware of the additional punishment. (*People v. Walker, supra,* at pp. 1027–1028.)

■ The People, of course, also have a right to enforce the terms of a plea. Nonetheless, if these same principles were applied, we seriously question whether the People could show that the proposed variance between the sentence and the terms of the plea was significant, or that the change was prejudicial. The recalculation required by the trial court resulted in a $369, or 4 percent, reduction from the amount the People claimed. Moreover, the court order did not preclude the Department from pursuing defendant, in accordance with its own administrative procedures, to recover the difference between the restitution amount and what it calculated to be the overpayment. (See *Hudson, supra,* 113 Cal.App.4th at p. 929.)

■ The People next raise a series of arguments as to why the court abused its discretion in determining the amount it ordered defendant to pay as restitution for the overpayment of cash benefits and food stamp benefits. With respect to the food stamp calculation, the People argue, in a variety of different ways, that *Crow, supra,* 6 Cal.4th 952, does not require the Department to recalculate the overpayment by applying the 20 percent income disregard. Although we agree that *Crow* does not directly address the amount or method of calculation of restitution amounts (see fn. 6, *ante*), we nonetheless agree with the reasoning of *Hudson, supra,* 113 Cal.App.4th 924, to the extent that it recognizes that a court has the discretion, in determining the amount of victim restitution, to reject the method of calculation used by the Department. It is not unreasonable to conclude that the Department's method, which does not apply the 20 percent income disregard that is applied when claimants accurately and timely report income, results in an underestimate of the benefits defendant would have been entitled to receive had she accurately and timely reported her income. Consequently, the Department overstated the difference between the amount defendant was paid, and the amount she would have been paid absent the fraudulent nondisclosure of income. Under established principles of review under the abuse of discretion standard, the fact that the Department's regulations, or other applicable state and federal regulations, specify a different method for calculating an overpayment does not demonstrate that the alternative method adopted by the trial court is unreasonable, arbitrary, or capricious. In fact, the district attorney, in its points and authorities filed with the trial court, *conceded* that "[*n*]*either*

*method is arbitrary or irrational.*"[7] Thus, the fact that the court rejected the Department's method, and adopted the method upheld in *Hudson,* demonstrates nothing more than a difference of opinion about which reasonable minds could differ, not an abuse of discretion.

■ Nor do state and federal regulations that require the Department to calculate the amount of overpayment according to a different method in any way circumscribe the discretion of the court to calculate the amount of restitution under section 1202.4. (See 7 U.S.C.A. §§ 2020(d) & 2014(e)(2)(C) [specifying that the 20 percent earned income deduction is not allowed when determining overissuance due to the failure of a household to report earned income in a timely manner]; Welf. & Inst. Code, §§ 18900, 10600 & 10600.1.) It may well be, as the People contend, that in the context of the state and federal regulatory scheme, disallowing the 20 percent earned income deduction is consistent with its purpose of providing an incentive to work and to report income in a timely manner. Nonetheless, restitution pursuant to section 1202.4 is not part of that scheme, and the court, in exercising its discretion to determine the amount, may do so according to any rational method that could reasonably be said to make the victim whole. (*People v. Thygesen, supra,* 69 Cal.App.4th at p. 992.) In this context, no deference is owed to the administrative regulations because the courts, not the state and federal agencies responsible for administering public aid programs, have the relevant expertise when it comes to interpreting and applying the provisions of the Penal Code. (Cf. *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 572–573 [38 Cal.Rptr.2d 139, 888 P.2d 1268] [deference should be given to an agency's administrative interpretation of the statutes it administers]; *Smith v. Board of Supervisors* (2002) 104 Cal.App.4th 1104, 1118 [128 Cal.Rptr.2d 700] [same].) Moreover, as the *Hudson* court noted, there is no conflict between the Department's obligation to follow state and federal regulations when calculating and collecting overpayments, and the court's determination that a different method was appropriate in determining the amount of restitution under section 1202.4, because the Department is not precluded from collecting the difference, if allowed under its own administrative procedures, or in a civil claim. (*Hudson, supra,* 113 Cal.App.4th. at p. 929.)

We also find no merit in the People's assertion that the court abused its discretion by requiring the Department also to apply the 20 percent income deduction in calculating the cash aid overpayment. First, the People did not

---

[7] Nor does the difference between the amount of overpayment as calculated by the Department under its regulations, and as determined by the court, render the restitution order irrational, arbitrary, or capricious, because the restitution amount need not reflect the amount of damages that might be available in a civil claim. (*People v. Bernal, supra,* 101 Cal.App.4th at p. 162.)

include the worksheets used to calculate the cash aid overpayments in the record on appeal, and we therefore cannot verify that the 20 percent income deduction was applied. In the absence of an adequate record we may deem the issue waived. (*Maria P. v. Riles, supra,* 43 Cal.3d at pp. 1295–1296; *Niederer v. Ferreira, supra,* 189 Cal.App.3d at p. 1510.) Second, the People point out that the *Hudson* court (*Hudson, supra,* 113 Cal.App.4th 924) did not reach the question whether the earned income deduction should also be applied to the calculation of restitution with respect to cash benefits, but fail to explain why the extension of the deduction to the calculation of cash benefits is irrational, arbitrary, or capricious. The trial court could reasonably conclude that, for the same reasons that failure to apply the 20 percent earned income deduction when calculating the amount of food stamps defendant would have been entitled to results in an overstatement of the restitution amount, the failure to apply the deduction would also result in an overstatement with respect to restitution for cash benefits.

Finally, the People challenge yet another variance between the method the court used to calculate the amount of restitution with respect to food stamps, and the method the Department deems correct based upon its interpretation of its regulations. The court directed the district attorney to have the Department recalculate its claimed restitution by subtracting from the amount of aid it paid to defendant the amount she would have received, "if she had done everything timely, didn't cheat at all, did everything the way she was supposed to." Under the applicable regulations, the food stamp allotment for which a household is eligible is based upon the total income of the household, which includes income received as cash benefits from AFDC. (See 7 U.S.C.A. § 2014(d); 7 C.F.R. § 273.9(b) (2005).) In accordance with the court's general direction, the worksheets show that the amount defendant should have received was calculated based upon her income, if properly reported, including the income from Pacific Bell and disability benefits, and the amount of cash aid she should have received based upon that income level. The People contend this food stamp allotment should instead be calculated based upon properly reported income plus the total amount of cash aid she actually received, which would include the overpayment of cash aid she obtained as a result of her fraudulent nondisclosure. As they did with respect to the application of the earned income deduction, the People assert that the method they advocate, i.e., including the cash aid overpayment that defendant will be required to repay as part of her income, is based upon the Department's interpretation of its regulations, and that the court should defer to the Department's expertise in these matters. As we have already explained, no such deference is owed because the court, in determining the restitution

amount, is interpreting and applying a provision of the Penal Code, not the state and federal regulatory scheme for administering public aid. (Cf. *Western States Petroleum Assn. v. Superior Court, supra,* 9 Cal.4th at pp. 572–573; *Smith v. Board of Supervisors, supra,* 104 Cal.App.4th at p. 1118.)

■ No doubt there may be more than one reasonable way to calculate the food stamp allotment defendant would have received if she had properly reported her income. (See, e.g., *Abernathy v. Yeutter* (W.D. Mo. 1989) 725 F.Supp. 459 [holding that administrative interpretation of Food Stamp Act directing that overpayments of cash aid should be included as household income when calculating an overissuance of food stamps was not arbitrary or irrational, despite the possibility that it could have the effect of penalizing recipients who must also repay the cash aid, and are no longer eligible for food stamps].) Under the abuse of discretion standard, however, it is irrelevant that there may be other reasonable ways of calculating what the correct food stamp allotment should have been, or even whether this court would have selected the method adopted by the trial court if we had determined the restitution amount in the first instance. Instead, we may reverse the trial court's order only if we determine that the method the court adopted was arbitrary, capricious, or irrational. ■ This we cannot do, because there is a rational basis for using the formula the court adopted: The court could, and apparently did, reasonably conclude that inclusion of the *overpayments* of cash aid as income in calculating the food stamp allotment ignores the fact that the restitution order will also require defendant to repay the cash overpayment and results in a figure representing less net welfare aid, i.e., cash and food stamps, than the amount she would have been entitled to had she never committed the crime. Even if the Department's approach to calculating overissuance for purposes of administrative recoupment may be a rational solution to the formidable task of distributing limited government resources (see *Abernathy v. Yeutter, supra,* 725 F.Supp. at p. 465), the court, for the different purpose of determining the amount of criminal restitution, could reasonably conclude that this method results in a restitution amount that exceeds the amount necessary to make the victim whole. (See *State v. Harvey* (1996) 547 N.W.2d 706, 710 [distinguishing discretion of Secretary of Agriculture to include cash overpayments that will also be recouped as income in administrative context of calculating overissuance of food stamps, and upholding discretion of court in ordering restitution upon criminal conviction to adopt a different formula].) The court therefore was within its discretion to exclude the cash aid benefits in calculating the restitution amount for food stamps.

## CONCLUSION

The judgment is affirmed

Marchiano, P. J., and Margulies, J., concurred.