Filed 3/11/13  P. v. Ouriel CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>,<br><br>       Defendant and Appellant. | B235094<br><br>(Los Angeles County<br>Super. Ct. No. SA073017) |

APPEAL from a judgment of the Superior Court of Los Angeles County. H. Chester Horn, Judge.  Affirmed.

Linda Acalado, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson amd Ryan Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Robert Ouriel appeals the trial court's restitution order awarding the victim more than $200,000 for the losses suffered as a result of a residential burglary that appellant committed. Appellant asserts that the restitution award ordered by the court was not supported by sufficient evidence in three respects: (1) the evidence presented at the hearing failed to establish the value of the jewelry taken in the charged burglary; (2) the court awarded restitution for a piece of jewelry—an emerald necklace—that was recovered and returned to the victim; and (3) the award of incidental expenses claimed by the victim was not supported by the evidence, and was not limited to expenses incurred as a result of appellant's criminal conduct. Appellant also argues his counsel was ineffective because counsel failed to (1) examine certain evidence relating to the jewelry; (2) object to the incidental expenses and other awards; and (3) properly prepare appellant's expert witness. As explained below, appellant's claims lack merit. There is sufficient evidence to support the restitution awarded, and the trial court acted within its discretion awarding restitution for the losses, including expenses that the victim incurred as a result of appellant's crime. Furthermore, appellant has not demonstrated that he suffered prejudice as a result of his counsel's representation during the restitution proceedings. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The victim, Julie Newmar reported that sometime between October 25, 2008, and November 3, 2008, jewelry was stolen from her home ("First Burglary"). According to Newmar, many of the jewelry pieces were custom designed. Newmar valued the collection at $250,000, but "in sentimental value, it is worth a million dollars."

Subsequently, Newmar reported a second residential burglary when jewelry and electronics equipment were stolen from her home on April 9, 2009 ("Second Burglary").

Shortly thereafter Newmar reported to detectives investigating the crimes that she had located some of the jewelry stolen during the First Burglary on eBay, an on-line auction website. A company by the name of "Gemrush," located in Round Lake Beach, Illinois, was conducting the auction of the jewelry on eBay.

2

In addition to reporting the crimes to police, Newmar contacted appellant, who was her attorney at the time. Appellant purportedly contacted Gemrush and asked that it cancel the auction on-line. According to Newmar, appellant stated that the owner of Gemrush did not know where he obtained the jewelry.

Los Angeles police detectives investigating the crimes contacted police detectives in Illinois, who in turn also contacted Gemrush. An owner of Gemrush told the police that the jewelry was purchased at a flea market. The seller claimed that the jewelry belonged to a neighbor of Jim Belushi in Los Angeles (Newmar is Belushi's neighbor). Police retrieved an emerald necklace and three sets of earrings from Gemrush and sent it to Los Angeles. Some of the jewelry had been altered. Newmar indicated that a 20 to 25 carat green emerald stone was missing from the emerald necklace that had been returned.

In June of 2009, an anonymous tip to police implicated appellant as the perpetrator of the two burglaries at the Newmar home. The tip also disclosed that appellant and Newmar had been in a relationship, that the large emerald stone had been a gift from appellant to Newmar, and that appellant claimed to have contacts in Illinois.

Based on the tip, police re-interviewed the owners of Gemrush. According to one of the owners, appellant sent the stolen jewelry to Gemrush, claiming that the jewelry had been obtained from an estate sale.

Appellant was arrested and charged with grand theft of personal property in the First Burglary. (Pen. Code,[1] § 487, subd. (a).)[2] Appellant pled not guilty. However, before the preliminary hearing, appellant withdrew his not guilty plea, and entered a plea of nolo contendere. The trial court accepted the factual basis for appellant's plea and found him guilty of the First Burglary. The court suspended the imposition of sentence and appellant was granted three years of formal probation, provided he serve 45 days of

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Appellant was not charged with the Second Burglary.

3

community service and pay full restitution to Newmar.[3]  After a restitution hearing, appellant was ordered to pay victim restitution of $221,775.

Appellant filed an appeal.[4]  Appellant also filed a petition for a writ of habeas corpus.[5]

## DISCUSSION

In this court appellant claims that the restitution award was not supported by sufficient evidence and that his trial counsel was ineffective in failing to contest the evidence presented at the restitution hearing.

### I.    Sufficiency of the Evidence

Appellant asserts that the restitution award ordered by the court was not supported by sufficient evidence because: (1) the evidence presented at the hearing failed to establish the value of the jewelry taken in the First Burglary; (2) the court awarded restitution for a piece of jewelry—the emerald necklace—that had been returned to Newmar; and (3) insufficient evidence supported the award of incidental expenses, and that award of the expenses was not limited to those losses suffered in the First Burglary.

### A.    Evidence Presented at the Restitution Hearing

At the restitution hearing the prosecutor presented a document entitled "Jewelry Appraised by Steven Robinson," entered into evidence as People's Exhibit No. 2

---

[3]    The court also imposed a restitution fine of $200 (§ 1202.4, subd. (b)), and a parole restitution fine of $200 (§ 1202.45), which was stayed.  Appellant was also ordered to pay a $30 court security fee (§ 1465.8, subd. (a)(1)).

[4]    Appellant's appeal was not timely filed.  In October 2011 this court granted appellant's request for relief from default.

[5]    In his petition for a writ of habeas corpus (case No. B239068), appellant asserts that his counsel was ineffective on the same grounds asserted in the direct appeal.  This court ordered the petition to be considered with the direct appeal.  As explained in this opinion, appellant's attack on his counsel's competence fails because his contentions lack merit and he has failed to demonstrate that he suffered prejudice as a result of his counsel's actions.  As a result, we summarily deny the writ petition in a separate order.

4

("Appraisal Report").  The Appraisal Report contains a photograph, brief description and the appraised value of each piece of jewelry (and other items) stolen in the First and Second burglaries.  The Appraisal Report valued the missing jewelry from the First Burglary at $157,550 and valued items stolen in the Second Burglary at $341,695.11.

Newmar testified that she had commissioned the Appraisal Report from Mr. Robinson, who was an expert jeweler.  She further explained how the information contained in the Appraisal Report had been prepared and compiled.  Newmar testified that after the theft of her jewelry, she began to research and gather information, including photographs of the stolen and missing pieces of jewelry.  Newmar also testified all of the jewelry had been custom made and that she consulted with Myrna Katz, the designer of many of the pieces of jewelry.  After assembling all the photographs and information from Ms. Katz, Newmar provided it to Robinson who appraised the jewelry and prepared the Appraisal Report.

In addition to presenting the written appraisal, Newmar testified about each piece of jewelry listed in the Appraisal Report and stated that in her opinion, the depictions of the stolen jewelry in the report were accurate.  Newmar also testified that when she first spoke to police, she was unsure of everything that had been stolen and at the time she undervalued the jewelry's worth.   Newmar conceded that she was not an expert at jewelry appraisal, but nonetheless testified that after speaking to experts and having the items appraised, she thought the appraised value listed by Robinson in the Appraisal Report on most[6] of the items of jewelry was accurate.

---

[6]     Appellant believed the appraisal value of $3,200 on item three (in the Appraisal Report), a hand-carved amethyst ring, was low; in Newmar's view the ring was worth $8,000.  Newmar also testified about the replacement value of item 16, her Mikimoto pearls.  According to Newmar, she was told by employees of Mikimoto that a replacement strand would be between $70,000 and $80,000 for smaller pearls and up to $160,000 for the larger pearls.  The Appraisal Report assessed the value of the pearl necklace at $75,000.

Newmar also presented her expenses she incurred in connection with the case in Exhibit No. 7 ("Summary of Expenses"). These expenses, totaling $20,899, included the cost of the security system, Newmar's personal time, fees paid to her secretarial staff, a researcher, a computer application and attorney fees.

Patrick Davis, a professional jewelry appraiser, testified for the defense. Davis reviewed the Appraisal Report. According to Davis, the Appraisal Report was vague and failed to include certain key elements in the appraisal process including stating the intended use of the report, whether it was a hypothetical report, or the report's approach to obtaining the value of the jewelry. In addition, according to Davis, the Appraisal Report failed to follow uniform standards of professional appraisal. Davis conceded that an appraisal could be based on photographs of the jewelry and other descriptive information, but that the Appraisal Report should, but did not, disclose the basis upon which valuation was derived. Davis further testified that he could not determine the value of the jewelry based upon information in the Appraisal Report. Nonetheless, Davis also testified that he could not state Newmar's appraisal fell outside a reasonable range of value for the items listed.

Appellant also presented a declaration from Scott Goldstein (who sold the missing large emerald stone to appellant), opining that the 20 carat emerald stone was only worth $47 to $50 per carat. Goldstein estimated the emerald necklace's value as between $2,000 and $3,000.

In a written ruling, the trial court ordered appellant to pay restitution as follows:

> The court conducted two days of evidentiary hearings to determine the appropriate restitution since the theft involved significant amounts of jewelry from the victim, Ms. Julie Newmar. The court has concluded that Ms. Newmar is entitled to restitution in the amount of the estimated value of the stolen jewelry, $157,550.00, plus interest from the date of loss of 10% per year, plus incidental expenses suffered by Ms. Newmar as a result of the theft, totaling $20,899.00. (See Penal Code section 1202.4(f)(3)(g).) Since the date of loss was the date of the theft from Ms. Newmar's home by defendant in late October, 2008, a period of 2 years and 9 months, the interest amounts to $43,326. Accordingly, the court

6

orders the defendant, Robert Ouriel, to pay restitution to Ms. Julie Newmar in the amount of $221,775.00.

The court finds that the estimated value of the jewelry as calculated by Mr. Steven Robinson, the expert jeweler retained by Ms. Newmar, are reasonable and therefore accepts them. The court has also accepted the estimated incidental expenses testified to by Ms. Newmar and outlined in People's Exhibit 7. While the defendant did present testimony from his own expert jewelry appraiser disputing Mr. Robinson's estimates, that expert testified that he could not conclude that Mr. Robinson's estimates for each of the stolen jewelry items fell outside of the range of reasonable estimated values for those items. Since defendant's actions are responsible for the losses and the fact that the items are no longer available for appraisal by experts, he must bear any burden of uncertainty.

## B.    Relevant Law

Section 1202.4 governs restitution in criminal cases. That statute not only provides that restitution fines should be imposed on a person convicted of a crime, it also describes the type of losses and expenses for which the victim of the crime can receive restitution. (§ 1202.4) This includes restitution for the value of stolen items as well as incidental expenses. The term "loss," in section 1202.4, is construed broadly and liberally to uphold the voters' intent. A trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute. The only limitation the Legislature placed on victim restitution is that the loss must be an "economic loss incurred as the result of the defendant's criminal conduct." (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1232.)

Accordingly, the trial court has broad discretion in choosing a method for calculating restitution as long as the method is rationally designed to determine the victim's economic loss. (*People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1409.) The trial court also has virtually unlimited discretion as to what information it can consider and where the information comes from in establishing the restitution amount.

7

(*People v. Hove* (1999) 76 Cal.App.4th 1266, 1275, citing *People v. Foster* (1993) 14 Cal.App.4th 939, 947, superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238-245.) "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) The victim's assessment of economic loss is prima facie evidence of loss for the purposes of restitution; a victim can establish a prima facie case regarding victim's losses through victim's own testimony. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26; *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.) Moreover, there is no requirement that the victim provide a sworn proof of loss or detailed documentation of costs and expenses. (*In re S.S.* (1995) 37 Cal.App.4th 543, 548, fn. 2; see also, e.g., *People v. Keicherler* (2005) 129 Cal.App.4th 1039, 1048.)

Furthermore, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. (*People v. Millard, supra,* 175 Cal.App.4th at p. 26.) Once the victim establishes a prima facie showing of the economic loss that the victim suffered, the burden shifts to the defendant to establish that the amount of loss is less than that claimed by the victim. (*People v. Taylor* (2011) 197 Cal.App.4th 757, 761.)

On appeal we presume that the restitution award is correct. (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) The trial court's determination of the amount of restitution ordered will not be reversed on appeal absent an abuse of discretion. The trial court may not make an order that is arbitrary or capricious and the order must be affirmed if there is a factual and rational basis for the amount of restitution that is awarded. (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382; *People v. Harvest* (2000) 81 Cal.App.4th 641, 653; *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.) No abuse of discretion is shown simply because the order does not reflect the exact amount of the loss. (*Akins, supra*, 128 Cal.App.4th at p. 1382.) The reviewing court will only determine whether there is sufficient evidence to support the

inferences drawn by the trier of fact, and it will not reweigh or reinterpret the evidence. (*People v. Tabb* (2009) 170 Cal.App.4th 1142, 1153, citing *People v. Baker* (2005) 126 Cal.App.4th 463, 469.)

With these principles in mind, we turn to appellant's contentions with respect to the sufficiency of the evidence supporting the restitution award.

## C. Analysis of Appellant's Claims

### 1. Sufficient Evidence Supported the Value of the Jewelry Stolen in the First Burglary

In our view sufficient evidence supported the court's order of $157,550 (plus interest) for the value of the jewelry stolen in the First Burglary. The amount of the loss was established in the Appraisal Report. Newmar provided the foundation for the report describing the information, descriptions and photographs she provided to Mr. Robinson to assist him in assessing the value of the items described in the Appraisal Report. The Appraisal Report, standing alone is a sufficient basis upon which to demonstrate the value of the loss. (See *People v. Hove*, *supra*, 76 Cal.App.4th at p. 1275 [finding an appraisal report is sufficient evidence to support loss].) In addition, Newmar testified that she believed that the appraisal was accurate. (See *People v. Prosser* (2007) 157 Cal.App.4th 682, 684 ["When an owner of stolen personal property testifies as to its value at a restitution hearing, his or her testimony constitutes prima facie evidence of value"].) Although, appellant's expert Mr. Davis found the report deficient in certain respects, even he could not say that the assessed value of the jewelry contained in the Appraisal Report fell outside a reasonable range of value for the items.

Given the broad discretion the court is afforded in determining restitution and the breadth of information upon which the trial court is permitted to rely in determining restitution, we conclude that the evidence presented was sufficient to support the court's award. All of appellant's arguments to the contrary would require this court to reweigh the evidence that was presented below. As we observed elsewhere, the trial court weighs and interprets the evidence and resolves all conflicts in it, and absent a showing that the trial court is arbitrary or capricious, we must affirm the order. Appellant did not carry his

9

burden to demonstrate the proffered values were erroneous. Accordingly, there is a sufficient factual and rational basis for the amount of restitution awarded for jewelry stolen in the First Burglary.

## 2. Jewelry Returned to Newmar: Emerald Necklace

In addition to assailing the evidence supporting the restitution award as a whole, appellant also contends that the restitution order includes an award representing value of the stolen emerald necklace (item 39 in the Appraisal Report). He points out that the emerald strand of beads was recovered from Gemrush and that only the large emerald stone was still missing. Appellant argues that the amount awarded by the court for restitution for item 39 – $22,000 – reflects the value of the *entire* necklace rather than the value of the missing stone. Appellant maintains that he is only responsible for restitution for the missing emerald, not the complete emerald necklace.

We do not agree with appellant's interpretation of the evidence. The Appraisal Report does not expressly indicate that the figure represents an award for the entire necklace rather than the value of the missing emerald stone encased in gold and diamonds. The Appraisal Report contains a photograph of the necklace with a large emerald and one photograph of the necklace without the large emerald. The description of the item in the report states only: "Not returned: large emerald gold and diamonds" and lists a value of $22,000. At the restitution hearing, Newmar stated that she did not know how Robinson determined the value of the emerald but assumed that he included the value of the gold and diamonds as well. She further admitted that she did not know whether Robinson determined a value for the stone alone, and in her view it appeared that he evaluated the "whole thing." When questioned as to whether the "whole thing" meant that he had assessed the value of the entire necklace, Newmar responded that because the bead strands of the necklace had been returned to her she did not believe the value listed reflected the entire necklace. It is thus clear from Newmar's testimony that she believed that the $22,000 figure in the Appraisal Report reflected the value of the emerald stone, encased in gold and diamonds, rather than the value of the entire necklace.

In addition, the Appraisal Report provides sufficient evidence for the court to find that the value of the emerald stone encased in gold and diamonds was $22,000. Even though appellant presented a declaration (from the person who originally sold the stone to appellant) to support the claim that the stone was worth far less than Robinson's estimate, appellant's estimate does not include the value of gold and diamonds that encased the stone. Moreover, appellant's expert Mr. Davis could not say that any of the values of the items in the appraisal were unreasonable. In light of the foregoing, we cannot say the trial court acted beyond the bounds of its broad discretion in fixing the amount of restitution for this item.

## D.    Award of Incidental Expenses

Appellant argues that trial court erred in awarding $20,899 in incidental expenses to Newmar. He presents several arguments with respect to the expenses. First, appellant contends that the awarded expenses were not directly attributable to his criminal conduct charged in the First Burglary, but also included expenses Newmar incurred because of the Second Burglary. Second, appellant challenges the basis of individual incidental expenses awarded by the court, including the cost of the security system, Newmar's personal time, fees paid to her secretarial staff, a researcher, a computer application and attorney fees, arguing that Newmar was not legally entitled to recover those expenses and/or that she failed to present sufficient evidence that they had been incurred. We address these claims in turn.[7]

---

[7]    We reject the respondent's argument that appellant forfeited any complaint with respect to the incidental expenses by failing to object to the award below. First we note that appellant's trial counsel did object on the grounds that the award of expenses appeared to include costs incurred as a result of uncharged conduct. Second, appellant was not required to object to the sufficiency of evidence to support the restitution award. Such a challenge requires no predicate objection in the trial court. (*People v. Butler* (2003) 31 Cal.4th 1119, 1126, quoting *Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23 ["'Generally, points not urged in the trial court cannot be raised on appeal. . . . The contention that a judgment is not supported by substantial evidence, however, is an obvious exception.'"].)

11

## 1.      Expenses and Appellant's Criminal Conduct

Initially the prosecution proceeded under the theory that appellant should pay restitution for both the First and Second Burglaries, even though appellant was not charged or convicted of the Second Burglary.  As a result, both the Appraisal Report and the Summary of Expenses included information that pertained to both burglaries.  The Appraisal Report listed and valued the missing jewelry separately, segregating the jewelry stolen in the First Burglary from that stolen in the uncharged Second Burglary.  However, the "Summary of Expenses" Exhibit 7 did not specifically apportion the expenses between the charged and uncharged crimes.  In fact, the document is entitled: "Summary of Expenses Incurred in Dealing with Burglary *Incidents*."

Before the prosecution presented the evidence relating to the expenses, the court addressed the issue of whether restitution could be based on both burglaries.  Appellant's counsel asserted that the restitution should be limited only to the losses suffered as a direct result of the First Burglary.  The court acknowledged that under certain circumstances where the evidence presented and/or the defendant's waivers and admissions made in connection with the defendant's plea agreement include the uncharged conduct as part of the plea, the court can award restitution for losses incurred based on the uncharged conduct.  However, the court also observed that in this case appellant's plea did not include admissions or statements relating to the Second Burglary and that in fact, the "waiver form that was presented to the court that took the plea . . . limits the restitution to restitution to be determined at a hearing for the charged offense."  Accordingly, the court ruled that "restitution will be limited to the charge to which Mr. Ouriel pled, and the losses suffered by Ms. Newmar as a result of that charged conduct, we will limit the testimony on the remaining aspects of the evidentiary hearing on those issues."

Thereafter the prosecution presented the Summary of Expenses, Exhibit 7, and asked Ms. Newmar about the expenses incurred, framing the inquiry to focus on expenses incurred in connection with the "burglary."  Newmar explained that she had to incur expenses for "research, secretary, computer, prints, [attorney] time, an appraiser and

12

security." She stated that the security system was added after the burglaries because she did not want to be victimized again. When she was asked what tasks the individuals listed on her expense sheet performed, Newmar explained that they helped her research and compile the information for the appraisal of the stolen jewelry. She further testified that she and her assistants expended "hundreds of hours" assembling information relating to her losses. She admitted she did not know exactly how much jewelry she owned before the burglaries and that she still did not know how many pieces of jewelry had been taken. She stated that significant resources and effort had been dedicated to determining when various pieces of jewelry had gone missing.

Based on the record before us, we cannot say that the trial court's decision to award $20,899 in incidental expenses is irrational. (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 800 [the trial court may use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole].) The trial court has broad authority under section 1202.4 to award incidental expenses to Newmar. In fact, as discussed elsewhere, the trial court has the authority to award restitution for any economic damages that the victim incurred. So long as there is evidence that the loss is attributable to defendant's conduct, the court is not limited to award restitution only in the exact amount of the loss which the defendant is actually found culpable.

Newmar presented evidence that she suffered economic loss by paying researchers, secretary, an attorney, and by obtaining an appraisal to determine what had been stolen and when it had been stolen; to locate some of the stolen pieces, to determine the value of her lost property; to secure her property from future crimes and to prepare for this case. Regardless of the occurrence of the Second Burglary, Newmar would have incurred these types of expenses. Indeed, Newmar testified that she installed the security system not because she had been burglarized a second time, but because she did not want to be the victim of burglary again. Thus, the only issue is whether the $20,899 awarded fairly reflects the amount of expenses incurred as a result of the First Burglary.

In our view, the trial court did not abuse its discretion in awarding the expenses. Based on Newmar's testimony it appears that this is not the kind of case where it was a

simple and quick task to determine which items had been taken in each burglary. Newmar stated that hundreds of hours had been devoted to the task and she had yet to discover the full extent of what was stolen. These unique circumstances—i.e., the nature of and number of items stolen, and the tremendous effort expended, and difficulty in determining what had been stolen and when it had been taken—reasonably justify the court's implicit conclusion that the losses were a result of appellant's criminal conduct as well as the court's explicit ruling that Newmar was entitled to the full amount of the expenses sought.

### 2. Legal Basis for Incidental Expenses Awarded

#### a. Security System

Appellant's next argument is that the trial court erred in awarding Newmar restitution for the installation of the security system.

Section 1202.4, subdivision (f)(3)(J) provides for restitution of "[e]xpenses to install or increase residential security incurred related to a crime, as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks." (§ 1202.4, subd. (f)(3)(J).) In addition to arguing that the security system expense was necessarily a result of the Second not the First Burglary, appellant also asserts that the restitution for a security system should not have been granted because appellant's crime was not a violent felony. Appellant's arguments lack merit.

Under section 1202.4, an award is not limited to restitution for violent felonies. Where a defendant is convicted of a violent felony, the statute provides the trial court "shall" include in the victim restitution award expenses reasonably incurred by a victim in installing a security system. (§ 1202.4, subd. (f)(3)(J).) But the statute does not preclude the court from awarding expenses for security systems in other cases as well. In fact, the statute provides a nonexclusive list of items of restitution. (§ 1202.4, subd. (f)(3) [using phrase "including, but not limited to"].) "Because the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's

14

criminal behavior, even if not specifically enumerated in the statute." (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046.) Thus, where a victim incurs the economic loss of installing a security system as a direct result of defendant's conduct, the trial court may include that amount in a victim restitution award regardless of whether the defendant was convicted of a violent felony.

Newmar testified that the security system was installed[8] as a result of appellant's commission of burglary. Newmar's testimony is sufficient in this case to establish that the security system was installed as a result of the First Burglary. Therefore, the restitution award for the security system was not improper.

### b. Newmar's Personal Expenses, Staff Time and Computer Expenses

Appellant's argument regarding the restitution award for Ms. Newmar's time is also unavailing. Appellant contends that Ms. Newmar should not have been awarded any amount due to the personal time that she spent tracking the stolen jewelry pieces and preparing items for this trial because Ms. Newmar failed to show that she passed up work opportunities or lost actual wages. Moreover, appellant asserts that Ms. Newmar failed to establish that her time is worth $150 per hour.

A victim may establish a prima facie showing of economic loss based on victim's own testimony. Section 1202.4, subdivision (f)(3) states, in part: "To the extent possible, the restitution order shall be . . . of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." Newmar testified that she expended her personal time preparing evidence for the court and locating the stolen items on the internet. The cost of this in terms of Newmar's own time was represented to be $9,000. Newmar's testimony

---

[8] Appellant also asserts Newmar was improperly awarded costs for "monthly" billings for security monitoring, rather than expenses for the installation of the system. However, Newmar's testimony clarified the expenses sought were for the installation of the system.

and the incidental expenses sheet was sufficient evidence to establish that this restitution award was appropriate.

Likewise Newmar presented evidence that she required secretarial staff and computer application assistance to compile and organize the information relating to her losses. It was within the trial court's discretion to find that amount reasonable. Based on the record, the court did not err in awarding these expenses.

### c. Attorney Fees

Appellant also argues that it was not proper for the trial court to award restitution related to attorney fees Newmar incurred. Appellant contends the award of restitution for the contingency fee was unreasonable as the trial court should have first determined what would be a reasonable fee under the Lodestar method for calculating attorney fees.

We agree with the Attorney General that the Loadstar Method is not the appropriate method to use in this case to determine fees. (See *People v. Taylor* (2001) 197 Cal.App.4th 757, 763). The Lodestar Method is a fee shifting mechanism applied in certain contexts such as civil litigation which confers a "'significant benefit'" to the public, or to provide compensation for the enforcement of public rights under a private attorney general theory, or to bring about attorney fee shifting to discourage SLAPP suits. In contrast, victim restitution presents different interests—the "primary purpose of victim restitution is to fully reimburse the victim for his or her economic losses." (*Ibid*.)

Even using appellant's reasoning, the Lodestar Method would still not be appropriate to use here. The Lodestar Method as appellant himself points out is utilized when the statute does not provide otherwise. Here, the statute clearly provides for actual attorneys fees. Here, the actual attorney fee is known and therefore there would be no need to use the Lodestar method.

Appellant also argues that the fees for counsel's attendance during the hearing were not "costs of collection." As the Attorney General points out, there was testimony that Newmar hired counsel as a direct result of the First Burglary. Newmar's attorney advised her and assisted her in locating documents to present to the Court. Accordingly,

16

the trial court was within its purview to award fees to Newmar as these were actual costs for an attorney.

## II.     Ineffective Assistance of Counsel

In appellant's direct appeal he claims that trial counsel provided ineffective assistance in various respects in restitution proceedings. As we shall explain, appellant has failed to demonstrate that he suffered prejudice as a result of his counsel's representation.

"'Generally, a conviction will not be reversed based on a claim of ineffective assistance of counsel unless the defendant establishes both of the following: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. [Citations.]'" (*People v. Foster* (2003) 111 Cal.App.4th 379, 383; *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Waidla* (2000) 22 Cal.4th 690, 718.)

Prejudice must be affirmatively proved. "'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.) If the defendant fails to make a sufficient showing either of deficient performance or prejudice, the ineffective assistance claim fails. (*People v. Foster*, *supra*, 111 Cal.App.4th at p. 383.)

A court should proceed directly to the issue of prejudice if it is easier to dispose of an ineffectiveness claim on that basis. (*Strickland*, *supra*, 466 U.S. at p. 697; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241; *People v. Holt* (1997) 15 Cal.4th 619, 703; *In re Fields* (1990) 51 Cal.3d 1063, 1079.)

With these guidelines in mind, we review appellant's claim of ineffective assistance of counsel.

17

### A. Failure to Examine Certain Evidence

Appellant asserts that his counsel was ineffective for failing to examine the copies of checks Newmar used to purchase the stolen jewelry.

Before the restitution hearing, appellant twice subpoenaed Newmar for copies of checks she used to pay Katz for the jewelry, but Newmar did not produce them prior to the restitution hearing. Although appellant conceded that the checks were not relevant as to the issue of the current market value of the missing jewelry, he argued that the checks were relevant to Newmar's credibility. Appellant asked a for continuance of the proceedings so he could obtain the evidence. The court denied the motion for the continuance and quashed the second subpoena.

Thereafter, during her testimony Newmar indicated she had copies of the checks in her possession at the hearing. Appellant's counsel did not, however, ask for a continuance to examine the checks or even ask to see the checks. Appellant argues that his trial counsel's failure to examine these checks during the hearing amounted to ineffective assistance of counsel.

We disagree. Even if we were to assume that the trial court would have afforded appellant's trial counsel an opportunity to examine these checks upon request, appellant fails to demonstrate a reasonable probability that such an examination would have changed the outcome. Although trial counsel did not ask to examine the copies of the checks, he vigorously cross-examined Newmar about them. Through his cross-examination, trial counsel was able to demonstrate that Newmar could not connect any of the payments shown by the checks to the jewelry she claimed was stolen. Thus, counsel was able to achieve his original strategic aims with respect to the checks—he was able to discredit Newmar and neutralize the value of this evidence. Accordingly, trial counsel's performance was not deficient with respect to this evidence.

### B. Failure to Object to Certain Evidence

Appellant also complains that his counsel was ineffective because he failed to: (1) object on the basis that incidental expenses sought were not limited to the charged burglary, failed to ask for a continuance to investigate the incidental expenses on the

18

Summary Expenses, Exhibit 7, and failed to challenge Newmar's evidence of incidental expenses; (2) object to the appraisal of the emerald necklace which included the value of the entire piece rather than only the missing stone; and (3) request that Newmar produce the jewelry that had been returned to her so that his expert could examine it.

### (1)    Incidental Expenses

Similar to the argument regarding the copies of the checks, appellant fails to establish that there is a reasonable probability that had trial counsel taken the above mentioned actions, that the trial court would have denied (or even reduced) the restitution awarded. As explained elsewhere, sufficient evidence supported the trial court's order of restitution and the court's order did not constitute an abuse of discretion. Appellant has not shown how any action his counsel could have taken with respect to incidental expenses would have resulted in a different award. Appellant's argument that counsel should have requested a continuance to investigate the items on the list, also fails because he has not shown the requisite prejudice. Indeed, the trial court had refused to grant a continuance to obtain the checks. The court also commented that the proceedings had already been delayed for six or seven months suggesting that further delays would not be permitted. Thus, any request for a continuance would have been futile; appellant's counsel was not ineffective for failing to request it.

### (2)    Emerald Necklace

Appellant also argues his trial counsel should have objected to the amount of restitution awarded for the emerald necklace because that amount awarded reflected the value of the entire necklace rather than only the missing stone. Appellant argues that the value of the emerald was $1,000 and thus, the rest of the necklace was valued at $21,000. Appellant argues that counsel's failure to object was ineffective assistance of counsel.

Counsel's assistance was not ineffective. Counsel did object to the value of the necklace as being $22,000. Notwithstanding counsel's objection, the trial court awarded restitution in the amount of $22,000. As we have explained elsewhere, the court did not abuse its discretion in fixing restitution for this item. In light of this, there is no probability that had trial counsel objected in the manner that appellant suggests, that the

court would have awarded a lower amount of restitution. Thus, appellant's argument that trial counsel was ineffective fails.

### (3) Request to Examine Jewelry

Appellant argues that trial counsel should have requested that the trial court order Newmar to produce the jewelry that had been returned to her so that his appraiser could have physically examined the jewelry rather than pictures of the jewelry. Appellant further argues that had his expert examined the jewelry, he would have been better prepared to counter Newmar's evidence and the trial court would necessarily have to award a lesser amount. He does not, however, argue that his expert would have appraised the jewelry at an amount less than Newmar's appraisal. Indeed, appellant's expert stated that jewelry could be appraised based on photographs and that Newmar's appraisal was not unreasonable. Appellant's argument is a conclusory statement without any basis as to why the court would necessarily award a lesser amount. Without any basis for his argument, appellant's statement is not sufficient to establish that there is a reasonable probability that the outcome would have been different.

## III. The Court's Ruling

Appellant also contends that this matter must be remanded because the trial court's ruling fails to indicate with sufficient specificity the basis of the restitution awarded. Appellant complains that at the end of the hearing he requested that in the ruling the court state the "formula and method used for determining the value for each item . . . and a separate valuation for each item not just a lump sum." The court responded that it would "state the basis for my ruling as to valuation." The court's ruling provides:

> The court has concluded that Ms. Newmar is entitled to restitution in the amount of the estimated value of the stolen jewelry, $157,550.00, plus interest from the date of loss of 10% per year, plus incidental expenses suffered by Ms. Newmar as a result of the theft, totaling $20,899.00. (See Penal Code section 1202.4(f)(3)(g).) Since the date of loss was the date of the theft from Ms. Newmar's home by defendant in late October, 2008, a period of 2 years and 9 months, the interest amounts to $43,326. Accordingly, the court orders the defendant, Robert

20

Ouriel, to pay restitution to Ms. Julie Newmar in the amount of
$221,775.00

The court's ruling does not constitute reversible error for lack of sufficient particularity. As noted elsewhere, "determination of the amount of restitution is reversible only if the appellant demonstrates a clear abuse of discretion. [Citation.] No abuse of discretion is shown simply because the order does not reflect the exact amount of the loss, nor must the order reflect the amount of damages recoverable in a civil action. [Citation.] In determining the amount of restitution, all that is required is that the trial court 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' [Citation.] The order must be affirmed if there is a factual and rational basis for the amount. [Citation.]" (*People v. Akins, supra,* 128 Cal.App.4th at p. 1382.)

Here, the record contains a factual and rational basis for the amount of restitution awarded. Moreover, the court, in a written order, provided its rationale for the amount of restitution awarded. The trial court found:

> The court finds that the estimated value of the jewelry as calculated by Mr. Steven Robinson, the expert jeweler retained by Ms. Newmar, are reasonable and therefore accepts them. The court has also accepted the estimated incidental expenses testified to by Ms. Newmar and outlined in People Exhibit 7. While the defendant did present testimony from his own expert jewelry appraiser disputing Mr. Robinson's estimates, that expert testified that he could not conclude that Mr. Robinson's estimates for each of the stolen jewelry items fell outside of the range of reasonable estimated values for those items. Since defendant's actions are responsible for the losses and the fact that the items are no longer available for appraisal by experts, he must bear any burden of uncertainty.

Thus, the record reflects that the court articulated the breakdown of the component parts of the restitution award and the basis of the award. There was nothing arbitrary or

capricious about the trial court's ruling.  It is sufficiently precise.  "To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered."  (*People v. Giordano*, *supra*, 42 Cal.4th at p. 664.)  The court's ruling conforms with the requirements of the law.

## DISPOSITION

The judgment is affirmed.




                                                              **WOODS, Acting P. J.**


**We concur:**




        **ZELON, J.**




        **JACKSON, J.**